[No. 43676. En Banc. April 22, 1976.]

JAMES B. HAINES, *Respondent*, v. ANACONDA ALUMINUM COMPANY, *Appellant*.

*Perkins, Coie, Stone, Olsen & Williams,* by *Graham H. Fernald,* for appellant.

*Robert E. Schillberg, Prosecuting Attorney,* and *Elmer E. Johnston, Jr., Deputy,* for respondent.

HAMILTON, J.—Appellant, Anaconda Aluminum Company, appeals a superior court judgment which declared

Laws of 1971, 1st Ex. Sess., ch. 43[1] (hereinafter referred to as chapter 43), unconstitutional and denied appellant an ad valorem property tax deduction.

In 1967, appellant and the Port of Everett executed a lease which gave appellant the right to use the public dock facilities at the port. A port revenue bond issue provided the funds to build the Everett port facilities. The lease required the appellant to pay the port sufficient rent to enable it to repay the principal and interest on the bonds. Appellant pays additional rent to reimburse the port for its general operating costs and insurance expenses.

In 1970, we decided *Pier 67, Inc. v. King County*, 78 Wn.2d 48, 469 P.2d 902 (1970), *cert. denied*, 401 U.S. 911, 27 L. Ed. 2d 810, 91 S. Ct. 876 (1971), which established a new rule for valuing leaseholds of tax-exempt, publicly owned land. In response to our *Pier 67* decision, the legislature enacted chapter 43, which provides a deduction for rent or other consideration from the value of a leasehold created prior to January 1, 1971. The chapter 43 deduction only applies to the leasehold years prior to 1973. Following the enactment of chapter 43, the appellant filed a timely appeal with the Snohomish County Board of Equalization, challenging the assessed value of its Port of Everett leasehold. The board denied the appeal, and appellant appealed to the State Board of Tax Appeals. The State Board of Tax Appeals entered an order granting appellant a deduction for

[1]Laws of 1971, 1st Ex. Sess., ch. 43, § 1, p. 417, states: "Notwithstanding any other provisions of this section or of any other statute, when the value of any taxable leasehold estate created prior to January 1, 1971 is being determined for assessment years prior to the assessment year 1973, there shall be deducted from what would otherwise be the value thereof the present worth of the rentals and other consideration which may be required of the lessee by the lessor for the unexpired term thereof: PROVIDED, That the foregoing provisions of this sentence shall not apply to any extension or renewal, made after December 31, 1970 of the term of any such estate, or to any such estate after the date, if any, provided for in the agreement for rental renegotiation." This act amends RCW 84.40.030.

rent pursuant to chapter 43. Respondent, the Snohomish County Assessor, appealed the decision to the Snohomish County Superior Court. The Superior Court reversed the Board of Tax Appeals' decision, concluding that chapter 43 violates Const. art. 4, § 1,[2] and Const. art. 7, §§ 1[3] and 2.[4] Appellant has appealed from this judgment.[5]

Initially, we should summarize this jurisdiction's history of ad valorem taxation of leaseholds in tax-exempt, publicly owned land. In a series of decisions known as the *Metropolitan Bldg.* cases, the court established certain standards for the valuation and assessment of leaseholds in tax-exempt, public land. Generally, these cases allow lessees to deduct indebtedness and rent reserved from the value of the leasehold. *In re Metropolitan Bldg. Co.,* 144 Wash. 469, 258 P. 473 (1927); *Metropolitan Bldg. Co. v. King County,* 72 Wash. 47, 129 P. 883 (1913); 64 Wash. 615, 117 P. 495 (1911); 62 Wash. 409, 113 P. 1114 (1911). In *Pier 67, Inc. v. King County, supra* at 55-56, we disapproved of this valuation method.

The court recognized that the value of the leasehold term minus the rent reserved is the means used in calculating a lessee's damages when his leasehold is *condemned.* Condemnation valuation represents the lessee's *equity* in the leasehold; it is a non sequitur to say that it

---

[2]"The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide." Const. art. 4, § 1.

[3]Const. art. 7, § 1 (amendment 14) states, in part:

"The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only."

[4]Const. art. 7, § 2 (amendment 17) reads, in part:

"Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed forty mills on the dollar of assessed valuation, which assessed valuation shall be fifty per centum of the true and fair value of such property in money: . . ."

[5]If we determine that chapter 43 meets the requirements of the constitution, then both parties agree that appellant is entitled to a deduction pursuant to that law.

is its true value for ad valorem taxation. Taxation of property at its value, without regard to the owner's equity, is an established princip*al* of ad valorem taxation.

. . .

The distinction between the lessee's equity in a leasehold and the value of the leasehold estate for tax purposes is a valid one. The fact that a leasehold interest has not appreciated does not mean that it is worth nothing. The value to be taxed is the value of the right to use the property over the period of the lease.

Additionally, we overruled the *Metropolitan Bldg.* cases and announced a new approach to valuing leaseholds in tax-exempt, publicly owned land. Assessors now must tax these leaseholds at one-half of their true market value.

The market value of a leasehold is to be measured by considering both benefits to be garnered from the use of the property over the term of the lease and the burdens placed upon it. Burdens on the leasehold are restrictions which limit its use. These burdens may arise from zoning ordinances or other legal limits on land use or may be restrictions imposed by the terms of the lease itself.

*Pier 67, Inc. v. King County, supra* at 57.

Rent and indebtedness are burdens on the lessee. However, they do not represent burdens on the leasehold, and are no longer deductible.

Chapter 43, in part, reinstates the valuation rules of the *Metropolitan Bldg.* cases for leaseholds executed prior to January 1971 for the tax years prior to 1973.[6]

■ Appellant asserts that our *Pier 67* decision is not a decision interpreting the Washington Constitution. Appel-

---

[6]Chapter 43 only provides a deduction for rent from the value of the leasehold. It does not allow lessees to deduct indebtedness from the value of the leasehold.

Since the enactment of chapter 43, the legislature has radically changed the method and procedure for taxing leaseholds of tax-exempt, public land. *See* Laws of 1973, 1st Ex. Sess., ch. 195, § 96; Laws of 1973, 1st Ex. Sess., ch. 187, §§ 1-15; Laws of 1972, 1st Ex. Sess., ch. 125, § 2; and, Laws of 1971, 1st Ex. Sess., ch. 288. Also, Const. art. 7, § 2 (amendment 17), was twice amended in different respects at the November 1972 general election by ratification of both S.J.R. 1 (amendment 55) and H.J.R. 47 (amendment 59).

lant contends the decision merely interprets RCW 84.04.080[7] and RCW 84.40.030.[8] If the *Pier* 67 case is only a statutory construction case, then the legislature possesses the necessary power to enact amendatory legislation such as chapter 43.

Most of the references to a statute in our *Pier* 67 decision involve RCW 84.40.030. In *State ex rel. Morgan v. Kinnear*, 80 Wn.2d 400, 403, 494 P.2d 1362 (1972), we describe this provision as legislation implementing Const. art. 7, § 2, which requires the taxable assessment to equal *"fifty per centum of the true and fair value of such property in money . . ."* Similarly, in our *Pier* 67 decision, we quoted Const. art. 7, § 2, and stated at page 51 that "RCW 84.40.030 follows the constitution with the general standard of valuation: . . ."

Therefore, in the *Pier* 67 decision we specifically adhered to the constitutional mandate of article 7, section 2, as implemented by RCW 84.40.030, and required leaseholds to be assessed at 50 percent of their true market value.

Even though chapter 43 represents legislation that modifies a constitutional decision, appellant still maintains the legislature possesses the power to ameliorate the hardship caused by our *Pier* 67 decision. Appellant asserts chapter 43 merely revised, for a limited time and in limited circumstances, the standards adopted in the *Metropolitan Bldg.*

---

[7] " 'Personal property' for the purposes of taxation, shall be held and construed to embrace and include, without especially defining and enumerating it, . . . all leases of real property and leasehold interests therein for a term less than the life of the holder . . . *Provided*, That mortgages, notes, accounts, certificates of deposit, tax certificates, judgments, state, county, municipal and taxing district bonds and warrants shall not be considered as property for the purpose of this title, and no deduction shall hereafter be made or allowed on account of any indebtedness owed." RCW 84.04.080.

[8] "All property shall be assessed fifty percent of its true and fair value in money. . . . [T]he assessor . . . shall value each article or description of property by itself, and at such price as he believes the same to be fairly worth in money at the time such assessment is made. The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor." Laws of 1961, ch. 15, § 84.40.030, p. 1154.

cases and followed by this court for 50 years. It provides a period of equitable transition to the new standard announced in *Pier* 67.

The history of leasehold taxation of public lands in California supports the appellant's position. After many years of allowing deductions for rent, the California Supreme Court adopted a new rule which denied the deductions. *De Luz Homes, Inc. v. County of San Diego*, 45 Cal. 2d 546, 290 P.2d 544 (1955). The California Supreme Court denied these deductions on the basis of a constitutional article similar to Const. art. 7, § 2. The California legislature then enacted Cal. Rev. Tax Code § 107.1 (1957), which is substantially similar to chapter 43.[9] In an opinion by Justice Traynor, the California Supreme Court upheld the constitutionality of section 107.1, and held:

> The constitutional requirements of assessment and taxation at full cash value and in proportion to value are no less flexible in this respect than other constitutional provisions. Neither provision precludes the temporary and limited application of a rule once approved by this court, if reasonably designed to mitigate hardships caused by our subsequent rejection of the rule.

*Forster Shipbuilding Co. v. County of Los Angeles*, 54 Cal. 2d 450, 459, 353 P.2d 736 (1960).

In the *Forster* opinion, at page 459, Justice Traynor also states that an appellate court may overrule a decision "prospectively only, even though it thereby temporarily preserves and applies a mistaken interpretation of the Constitution." The court then concludes, at page 459:

> Such temporary application of the rule of an overruled case may be prescribed by appropriate legislation as well as by judicial decision, for the Legislature is no less competent than the court to evaluate the hardships involved and decide whether considerations of fairness and public policy warrant the granting of relief.

■■ Our research discloses no authority, except the

---

[9]The only difference is that section 107.1 is somewhat broader than chapter 43. California allowed the deduction for rents for all older leases, whereas chapter 43 limits the deduction to a term of 3 years.

*Forster* case, which permits a legislature to suspend the application of a judicial decision interpreting the constitution. Chapter 43 only provides for a temporary suspension of a constitutional decision. However, it still represents a forfeiture of the court's power to interpret the constitution and also casts the judiciary in a subservient role to the legislature. The ultimate power to interpret and enforce the constitution belongs to the judiciary. Therefore, we decline to follow the *Forster* decision, and hold that chapter 43 violates Const. art. 4, § 1, and Const. art. 7, § 2.

█ Finally, this court does possess the power to review our *Pier* 67 decision and determine whether it should be given only prospective application. In determining the general or unlimited retroactive effect of an overruling decision, courts customarily focus on whether particular persons have relied justifiably upon the overruled decision. If so, the court must ascertain whether a retroactive application of the overruling decision would defeat these reliance interests. *See Taskett v. KING Broadcasting Co.*, 86 Wn.2d 439, 454, 546 P.2d 81 (1976) (Stafford, C.J., concurring in part, dissenting in part); *Geise v. Lee*, 10 Wn. App. 728, 733-34, 519 P.2d 1005 (1974), *rev'd on other grounds*, 84 Wn.2d 866, 529 P.2d 1054 (1975); *Comment Note.—Prospective or Retroactive Operations of Overruling Decision*, Annot., 10 A.L.R.3d 1371, 1386 (1964).

Appellant maintains it relied upon the *Metropolitan Bldg.* decisions when it executed its lease with the port in 1967. Specifically, appellant contends that it agreed to a higher rental fee, because it would not pay any property taxes under the valuation method of the *Metropolitan Bldg.* cases. The rental agreement directs appellant to pay an amount equal to the principal and interest on the bonds and the general operating expenses. Appellant did not prove that this rental in fact represents a higher rate because of the anticipated tax benefits. We can only speculate that the appellant would have been able to negotiate a lower rental if the parties were aware of the future tax consequences. We cannot say, therefore, that the *Pier* 67

decision defeated appellant's reliance interests. Thus, our *Pier 67* decision is to be given retroactive application in keeping with the general rule that an overruling decision is to be given retroactive effect, unless it is specifically provided otherwise. *Comment Note.—Prospective or Retroactive Operations of Overruling Decision*, Annot., 10 A.L.R.3d 1371, 1384 (1964).

The judgment of the trial court is affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.