[No. 2197–3. Division Three. January 12, 1978.]

ROMAIN BRADBURY, as *Administrator*, ET AL, *Appellants*, v. AETNA CASUALTY & SURETY COMPANY, *Respondent*.

*J. Gregory Casey* and *Richter, Wimberley & Ericson,* for appellants.

*James S. Craven* and *Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll,* for respondent.

MUNSON, C.J.—The basic issue presented by this appeal is whether the decisions in *Federated Am. Ins. Co. v. Raynes,* 88 Wn.2d 439, 563 P.2d 815 (1977), and *Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975), interpreting the statute relating to uninsured motorist insurance coverage, RCW 48.22.030, should be applied retroactively. We respond in the affirmative.

On June 30, 1974, Gail Bradbury and Randy Henry were proceeding on Interstate Highway 90 near the Washington–Idaho border. A car driven by Nora Brubaker traveling in the opposite direction crossed the center line and struck plaintiffs' vehicle head–on. Miss Bradbury was killed almost instantaneously, and Randy Henry received serious and disabling injuries.

The car in which the plaintiffs were riding was owned by Randy Henry's father. Mr. Henry had insured both the car involved in the accident and another vehicle with defendant under a comprehensive liability policy which included both real and personal property. The father had paid premiums for uninsured motorist coverage on both vehicles in the amount of $5 and $6. Within a month after the accident, Miss Bradbury's parents had discussed with defendant's claim representative the amount of coverage available. He advised them that the uninsured motorist coverage was $15,000 per person on the vehicle involved in the accident, plus a $2,000 medical payment provision of that policy. The representative provided the Bradburys with a claim settlement agreement containing the language that it was "in full

satisfaction of the Company's obligations . . . as a result of the accident identified above." The Bradburys returned the signed agreement later by mail. Ultimately the company paid them $17,000. Randy Henry accepted a $5,000 partial payment on September 19, 1974, and an additional $10,000 December 13, 1974, in full satisfaction of the company's obligations.[1] He also received $2,000 in medical payments. Both parties agree:

> At no time did either the insureds nor Aetna's claim representative believe the coverage afforded by the uninsured motorist section of the policy to exceed $15,000 per person.

The trial court in effect found that these agreements were executed in good faith without fraud, undue influence or overreaching. Further, the parties honestly believed that the only available amount of money was the $15,000 maximum per person on the policy covering the vehicle involved in the accident and the medical payment provision. The issue of "stacking" uninsured motorist provisions was not considered.

Had that accident occurred in 1976, instead of 1974, a different result obviously would have been obtained. *Cf. Cammel v. State Farm Mut. Auto. Ins. Co., supra.* In *Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 448, 546 P.2d 81 (1976), the court adopted the rationale of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971), stating:

> [T]he United States Supreme Court set forth the following three factors to serve as the proper test for determining retroactivity in civil suits:
>> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . Second, it has been stressed that "we must . . . weigh the merits

---

[1]September 19, 1974, Randy Henry signed a claim settlement as partial satisfaction and on December 13, 1974, he signed a claim settlement agreement as full satisfaction of his claim.

and demerits of each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

In *State Farm Mut. Auto. Ins. Co. v. Bafus,* 77 Wn.2d 720, 466 P.2d 159 (1970), the court held at page 725:

Accordingly, we deem it the rule that, in the absence of a statute or contract to the contrary, one who has coverage under the uninsured motorist provisions of two or more policies of insurance in separate companies is entitled to but one recovery to the extent of his maximum coverage under the larger of them, and cannot increase his total award by stacking one liability upon the other.[2]

(Citations omitted.) This quotation led to the inference that our Supreme Court would not approve the "stacking" of uninsured motorist coverage. That inference was quickly laid to rest in *Cammel* in which *Bafus* was distinguished in that it was held not to allow a double recovery. Here, it is stipulated for purposes of this action that both parties' damages exceeded the $15,000 maximum of one policy. Clearly under both *Cammel* and *Federated American Insurance Company* if the damages exceed that reasonable for one vehicle, coverage provided for a second or additional vehicles may be invaded up to the amount of the total damages. There will be no double recovery.

 Interpreting our uninsured motorist statute, the premise of both *Cammel* and *Federated American Insurance Company* is based upon a public policy and legislative purpose, *i.e.*:

---

[2]Defendant's reliance upon *Hustead v. Farmers Ins. Group,* 90 Nev. 354, 526 P.2d 1116 (1974), is not well taken inasmuch as the facts in that case parallel those of *Bafus.* The amount of plaintiffs' damages ascertained were within the maximum limits of a policy and there was no justification for either stacking or double recovery.

[T]o broaden greatly the protection of the public against economic consequences and partly to ameliorate the ravages from injuries at the hands of uninsured persons operating vehicles upon the public streets and highways— . . .

*Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 335, 494 P.2d 479 (1972).

With this statement, the insurance industry was put upon notice of the state's public policy in adopting the uninsured motorist coverage as early as 1972.[3] Thus, the first factor in determining retroactivity does not appear to be a problem.

The second factor, *i.e.,* weighing the merits and demerits of each case, the purpose and effect of stacking and its retroactive operation, does not appear to be a determining factor here. *Federated American Insurance Company* holds that one who pays a premium for uninsured motorist coverage should be entitled to the benefits of that coverage, and if in fact he has paid two premiums, then he is entitled to a maximum of $30,000 per person and coverage.

Third, we do not find that the application of the "stacking" rule will produce "substantial inequitable results if applied retroactively," particularly when the insurance industry has received premiums for this coverage. There is no indication that vast numbers of these cases presently exist.

We therefore conclude as a matter of public policy the decision in *Cammel* and *Federated American Insurance Company* should be applied retroactively; the agreements executed were not binding to the extent that there was additional coverage available if, in fact, plaintiffs can prove their damages exceeded the $15,000 coverage. If they are unable to satisfy the trier of fact that the damages exceed

---

[3]As the plaintiffs point out, citing 16 cases from other jurisdictions, plus 2 in which this particular defendant was a party and which involved the issue of stacking, this issue was not an unknown possibility to defendant at the time of plaintiffs' accident.

$15,000, there is no justification for awarding them any excess.

Judgment is reversed and the case remanded for trial.

GREEN and McINTURFF, JJ., concur.

Reconsideration denied February 14, 1978.

Review granted by Supreme Court July 21, 1978.