[No. 45457.   En Banc.   January 5, 1979.]

ROMAIN BRADBURY, as Administrator, ET AL, Respondents, v. AETNA CASUALTY & SURETY COMPANY, Petitioner.

*James S. Craven* and *Winston & Cashatt,* for petitioner.

*Richter, Wimberley & Ericson, P.S.,* by *William Wimberley, J. Gregory Casey,* and *David M. Grant,* for respondents.

STAFFORD, J.—Aetna Casualty and Surety Company petitioned this court to review a Court of Appeals decision giving retroactive effect to *Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975). We granted the petition and affirm the Court of Appeals.

On June 30, 1974, a vehicle owned by Dr. Henry was being driven by Gail Bradbury, a permissive user. Dr.

Henry's son Randy was a passenger in the vehicle. The Henry vehicle was struck by an automobile driven by an uninsured motorist who was wholly at fault. Ms. Bradbury died almost instantly and Randy Henry suffered severe injuries.

Prior to the accident Dr. Henry had paid Aetna Casualty and Surety Company two premiums for uninsured motorist coverage on his two vehicles, one of which was involved in the accident. The policy limit for uninsured motorist coverage on each vehicle was $15,000 per person and $30,000 per accident.

Following the accident, Mr. Fender, Aetna's claim representative, met with Mr. and Mrs. Bradbury, parents of the deceased driver. Mr. Fender informed them that the uninsured motorist coverage on the Henry vehicle was $15,000 per person plus an additional $2,000 medical payment. The Bradburys were presented with a claim settlement agreement which stated it was "in full satisfaction of the Company's obligations . . . as a result of the accident . . ." In August 1974, Mr. and Mrs. Bradbury signed and returned the settlement agreement. In return Aetna remitted $17,000 to the Bradburys representing $15,000 under the uninsured motorist coverage and $2,000 for medical payments.

Mr. Fender also visited Randy Henry and conveyed similar information concerning uninsured motorist coverage on the Henry vehicle. Aetna made an initial payment of $5,000 to Randy Henry who signed a partial release in September 1974. Thereafter, Aetna concluded Randy Henry was entitled to the balance of the coverage and on December 13, 1974, paid him the additional $10,000 and $2,000 in medical payments at which time he signed a release "in full satisfaction of the Company's obligations . . .

More than 1 year after all releases had been signed and payments made under the uninsured motorist provision of the policy covering Dr. Henry's damaged automobile we decided *Cammel v. State Farm Mut. Auto. Ins. Co., supra.*

We held therein that under RCW 48.22.030 multiple coverage or "stacking" was provided if multiple premiums had been paid for uninsured motorist coverage.

On February 23, 1976, Mr. Henry and the Bradburys sought a declaratory judgment that *Cammel* should be applied retroactively. They argued that the two premiums paid for uninsured motorist coverage on Dr. Henry's two vehicles provided additional uninsured motorist coverage based on the theory of "stacking". The trial court found as a fact that both the Bradburys and Mr. Henry had had ample time in which to consider and act upon the settlement agreements and that Mr. Fender had exerted no undue pressure upon them. The trial court also found that the releases were executed in good faith, without any fraud, undue influence or overreaching. All parties agree that neither the insureds nor Aetna's *claim representative* believed the uninsured motorist coverage exceeded $15,000 per person. It further appears that all parties agreed the subject of multiple uninsured motorist coverage for the payment of multiple premiums, was not considered when the releases were signed and the payments made.

The trial court entered judgment for Aetna concluding the insurer had fully satisfied all of its contractual obligations to both Mr. Henry and the Bradburys and thus owed them no further duty. In ultimate effect the trial court concluded *Cammel* did not apply retroactively.

On appeal the Court of Appeals reversed the trial court. We granted Aetna's petition for review for the purpose of determining whether *Cammel* should be applied retroactively to negate otherwise valid releases or settlement agreements. The Court of Appeals is affirmed albeit on different grounds.

The question of voiding an otherwise valid release or settlement agreement by retroactive application of decisional law is one of first impression in this state. Generally decisional law is given retroactive effect although this practice

is neither constitutionally nor statutorily compelled. Comment Note, *Prospective or Retroactive Operation of Overruling Decisions*, Annot., 10 A.L.R.3d 1371, 1378 (1966).

■■ On a number of occasions, however, we have recognized exceptions to the general rule and have applied decisional law either prospectively or with only limited retroactive effect. *Cascade Sec. Bank v. Butler,* 88 Wn.2d 777, 567 P.2d 631 (1977); *Haines v. Anaconda Aluminum Co.,* 87 Wn.2d 28, 549 P.2d 13 (1976); *State ex rel. State Fin. Comm. v. Martin,* 62 Wn.2d 645, 384 P.2d 833 (1963).

*Martin* extensively discusses the application of prospective overruling to the area of contracts. *Martin* gave only limited retroactive effect to the newly declared decisional law because, as we said at page 663: "[t]hey had a *right to rely* on the *Gruen* decision and to apply it; hence, we cannot rightly look backward in overruling *Gruen* . . . but must . . . require that the effect of the instant decision be prospective . . ." (Italics ours.) In *Haines* we similarly held, in a contract–tax context, that *lack of justifiable reliance* upon past decisional law was the touchstone for our applying newly declared decisional law retroactively. We said in *Haines* at page 34:

> In determining the general or unlimited retroactive effect of an overruling decision, courts customarily focus on whether particular persons have *relied justifiably* upon the overruled decision. If so, the court must ascertain whether a retroactive application of the overruling decision would defeat these *reliance interests.*

(Italics ours.) Finally, *justifiable reliance* was the basic reason in the contractual setting for prospective rather than retroactive application of newly declared decisional law in *Cascade.* We said at page 784:

> [R]etroactive application of the decision may result in substantial hardships to the parties who have *relied on good faith* on the rule.

(Italics ours.) The national trend is similar to our own. The factor of *justifiable reliance* has been given the greatest attention in determining whether newly declared decisional

law should be applied retroactively or prospectively. Comment Note, *Prospective or Retroactive Operation of Overruling Decisions, supra* at 1379.

Thus, it appears the basic consideration in determining whether *Cammel* should be applied retroactively to void an otherwise valid release or settlement agreement is whether Aetna *justifiably relied* on the law as it existed *prior* to *Cammel.*

In asserting its justifiable or reasonable reliance Aetna points to the findings of the trial court that: Aetna's *claims representative* exerted no undue pressure upon the other parties at the time the releases or settlement agreements were executed; the instruments were executed in good faith, without fraud, undue influence or overreaching by the *claims agent*; the parties and the *claims agent* acted without considering any possibility of the "stacking" of the policy limits of the uninsured motorist coverage. Further, the trial court found that the *claims representative,* as well as the Bradburys and Mr. Henry, believed all claims against Aetna were settled under the terms of the policy and that the only amount available under the uninsured motorist coverage was $15,000 for each person or a total of $30,000 for the accident.

We do not agree with Aetna's analysis of the justifiable reliance issue. In determining whether *Aetna* justifiably and reasonably relied on our earlier case law it matters not whether the *claims agent* acted in good faith or may have relied on what *he* believed the law to be. The critical question is whether *Aetna itself* reasonably and justifiably relied upon an existing state of law.

Aetna claims reliance on the fact that Washington had aligned itself against the "stacking" of coverage in uninsured motorist policy provisions. In support of this assertion Aetna cites *Pacific Indem. Co. v. Thompson,* 56 Wn.2d 715, 355 P.2d 12 (1960) and *State Farm Mut. Auto. Ins. Co. v. Bafus,* 77 Wn.2d 720, 466 P.2d 159 (1970). *Pacific* is inapposite because it was decided prior to the enactment of

RCW 48.22.030 which mandated uninsured motorist coverage. *Pacific* is neither concerned with "stacking" under statutorily mandated uninsured motorist coverage nor with the attendant public policy considerations underlying statutorily required coverage. Aetna suggests, however, that as early as 1970 *Bafus* set forth this court's view opposing "stacking", a view which was not changed until *Cammel* in 1975, over a year subsequent to the execution of the releases or settlement agreements herein. In short, Aetna argues that it justifiably and reasonably relied upon an apparent "anti–stacking" position held by this court prior to *Cammel.* As with *Pacific,* Aetna's reliance upon *Bafus* was misplaced. *Bafus* does *not* indicate our judicial disapproval of "stacking" uninsured motorist coverage. In fact, *Bafus* does not deal with the "stacking" of uninsured motorist coverage within the policy limits of a *single policy* upon which multiple premiums have been paid for the coverage of several automobiles (*American States Ins. Co. v. Milton,* 89 Wn.2d 501, 573 P.2d 367 (1978)) or with "stacking" of uninsured motorist coverage within the policy limits of multiple policies issued by *one company* and upon which multiple premiums have been paid (*Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975)). *Bafus* merely held that one who holds uninsured motorist coverage with *separate companies* under *separate policies* may claim recovery under the larger of the coverage limitations but may not increase the total award by "stacking" the coverage of policies issued by the *separate* insurers. Consequently, prior to *Cammel* this court had taken *no* position on the subject of "stacking" uninsured motorist coverage within the limits of a single policy upon which multiple premiums had been paid for coverage of several automobiles.

In addition, *Bafus* expressly states the insured would have been compensated adequately under the coverage of the larger of the two policies. To the contrary, in the instant case an unchallenged finding of fact recognizes that none of the parties herein considered the payments made

adequate compensation for the injuries and damages sustained although there had been no determination of damages by the trial court.

While we do not consider ourselves bound by judicial trends in other states, the favorable trend toward "stacking" may not be ignored completely when considering the question of Aetna's reasonable or justifiable reliance upon the belief that "stacking" would not be adopted in Washington. In fact, Aetna's lawyer conceded in oral argument that both nationally and locally the issue of "stacking" was a "hot issue" among defense and claimants lawyers. Clearly, the issue was known to be in a state of flux.

In light of the limited holding in *Bafus,* the known fluid state of the law nationally, and the fact that this court had never taken an anti–stacking position under facts similar to those before us, it cannot be said Aetna relied reasonably or justifiably upon any prior decisional law of this court. The asserted prior decisional law upon which Aetna claims reliance simply did not exist. As a result, *Cammel* neither overruled nor changed any prior rule of law on the subject of "stacking". *Cammel* was a case of first impression on a subject known within the insurance industry to be unsettled. Thus, on the limited facts before us there was no justifiable or reasonable reliance upon a prior decisional law that should prevent the normal retroactive application of *Cammel.*

Aetna urges that the retroactive application of *Cammel* will impair the obligation of contract under the United States Constitution, article 1, section 10, clause 1. We disagree. It is true that a few early decisions suggested the above–mentioned constitutional prohibition applied to judicial opinions as well as legislative actions. However, more recent cases have rejected the suggestion and applied the constitutional prohibition to impairment by legislation only. *Tidal Oil Co. v. Flanagan,* 263 U.S. 444, 68 L. Ed. 382, 44 S. Ct. 197 (1924); *Fleming v. Fleming,* 264 U.S. 29,

68 L. Ed. 547, 44 S. Ct. 246 (1924); *Washington v. Maricopa County*, 152 F.2d 556 (9th Cir. 1945), *cert. denied*, 327 U.S. 799, 90 L. Ed. 1024, 66 S. Ct. 900 (1946).

■ Finally, Aetna raises the question whether the issue of damages should be remanded for arbitration, pursuant to the insurance contract. We will not consider issues raised for the first time on appeal. *Eldredge v. Kamp Kachess Youth Serv., Inc.*, 90 Wn.2d 402, 583 P.2d 626 (1978); *Martin v. Municipality of Metro. Seattle*, 90 Wn.2d 39, 42, 578 P.2d 525 (1978). Whether arbitration is the proper procedure by which to determine damages is a matter that initially must be resolved by the trial court.

The Court of Appeals is affirmed and the cause is remanded to the trial court to determine first whether there is a contractual right to arbitrate under the facts of this case. If the trial court concludes arbitration is inappropriate, it shall proceed with a new trial.

WRIGHT, C.J., ROSELLINI, HAMILTON, UTTER, and BRACHTENBACH, JJ., and RYAN, J. Pro Tem., concur.

DOLLIVER, J. (dissenting)—The majority rejects the tests for determining retroactivity in civil cases set forth in the Court of Appeals. *Bradbury v. Aetna Cas. & Sur. Co.*, 19 Wn. App. 66, 573 P.2d 395 (1978). It adopts a single standard: Was there justifiable reliance by defendant on the law as it existed prior to our decision in *Cammel v. State Farm Mut. Auto. Ins. Co.*, 86 Wn.2d 264, 543 P.2d 634 (1975)?

Defendant argues *State Farm Mut. Auto. Ins. Co. v. Bafus*, 77 Wn.2d 720, 725, 466 P.2d 159 (1970), indicated this court would not approve stacking. In *Bafus* we said:

> No provisions in either contract of insurance, nor in the statute, have been pointed out which would warrant a stacking of liability, one policy upon the other, to allow duplicate or overlapping awards for the same bodily injuries.
>
> Accordingly, we deem it the rule that, in the absence of a statute or contract to the contrary, one who has coverage under the uninsured motorist provisions of two or

more policies of insurance in separate companies is entitled to but one recovery to the extent of his maximum coverage under the larger of them, and cannot increase his total award by stacking one liability upon the other. *Maryland Cas. Co. v. Howe,* 106 N.H. 422, 213 A.2d 420 (1965); *Burcham v. Farmers Ins. Exch.,* 255 Iowa 69, 121 N.W.2d 500 (1963). Supporting this conclusion is the rationale of our decision in *Miller v. Allstate Ins. Co.,* 66 Wn.2d 871, 405 P.2d 712 (1965).

Of this language, the Court of Appeals said, "This quotation led to the inference that our Supreme Court would not approve the 'stacking' of uninsured motorist coverage." *Bradbury,* at 69. Was Aetna justified in relying on this inference? The conclusion of the majority, that Aetna should have known of this court's position on the stacking issue because the issue is a matter of considerable dispute nationwide, does not answer the critical question. The decisions reached in other jurisdictions and the extent to which attorneys debate the merits of stacking are not really relevant considerations in determining whether Aetna justifiably relied on this court's language in *Bafus.*

I believe that reasonable persons, including attorneys and insurance companies, could have interpreted this court's language as disapproving the stacking of policies. The defendant was entitled to rely on the inference that we would disapprove of stacking regardless of how many companies issued the policies. At least four judges (the trial court and the Court of Appeals) believed stacking was not the policy in this state. The defendant was entitled to rely on a similar belief.

The majority points to the distinctions between *Bafus* and *Cammel.* These distinctions are valid and form the basis for our holding in *Cammel* that stacking of policies from the same company is proper. But it is unreasonable to expect persons who read *Bafus* to recognize, in advance, that the *Cammel* situation would produce a different result. We may now say that prior decisional law did not exist. But the belief it did exist was certainly justified.

One of the primary functions of a court of last resort is to write its opinions in such a way that they can reasonably be relied upon by attorneys and their clients in determining a future course of action. The defendant read *Bafus* and acted accordingly. The *Cammel* holding should not be applied retroactively against the defendant and others who relied on an earlier decision of this court. Otherwise, we might as well abandon any claim for the predictive quality of our decisions or any doctrine of reasonable reliance.

HICKS, J., concurs with DOLLIVER, J.