[No. 59728-1-I.   Division One.   June 9, 2008.]

KARINE PAOPAO, *Individually and on Behalf of the Class of Similarly Situated Persons, Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES ET AL., *Respondents.*

*Daniel F. Johnson* and *David E. Breskin* (of *Breskin Johnson & Townsend, PLLC*) and *William W. Houck*, for appellant.

*Robert M. McKenna, Attorney General*, and *Carrie L. Bashaw, Assistant*, for respondents.

¶1 APPELWICK, J. — A settlement between Karine Paopao, a Medicaid recipient, and the State, negotiated as an accord and satisfaction in reasonable reliance on existing decisional law, is not subject to vacation based on a subsequent United States Supreme Court decision, mutual mistake of law, or ultra vires agency action. We affirm.

*Facts*

¶2 On November 14, 2002, a car, driven by Juanita Salazar, struck Karine Paopao. Paopao suffered extensive injuries due to the accident. Because Paopao was unable to pay her medical bills, she sought assistance from the Medicaid program administered by the Washington Department of Social and Health Services (DSHS). DSHS paid Paopao's medical expenses, totaling approximately $66,000.

¶3 In 2004, DSHS asserted a lien on any amount Paopao received from Salazar or her own insurance company. In May 2005, Paopao settled with Salazar's insurance company for $25,000. Paopao's own underinsured motorist coverage paid her $30,000. Paopao recovered a total of $55,000. The settlements were not apportioned between medical expenses and other losses.

¶4 DSHS initially sought reimbursement for the entire amount it expended for her medical expenses. After negotiations, DSHS and Paopao settled the Medicaid lien for $20,000. On November 3, 2005, Paopao sent final payment to DSHS. DSHS released the lien in February of 2006.

¶5 In May of 2006, the United States Supreme Court filed *Arkansas Department of Health & Human Services v. Ahlborn,* which limited a state's authority to assert and

enforce a lien in excess of an amount representing medical expenses when a Medicaid recipient recovers from a third party tortfeasor. 547 U.S. 268, 285, 283, 126 S. Ct. 1752, 164 L. Ed. 2d 459 (2006).

¶6 Four months after the United States Supreme Court's decision in *Ahlborn*, Paopao filed a putative class action lawsuit in King County Superior Court, seeking damages, injunctive relief, and asserting a claim for a declaratory order based on unjust enrichment. Relying on the holding in *Ahlborn*, Paopao argued her settlement with DSHS was invalid and should be voided.

¶7 DSHS filed for summary judgment, arguing Paopao's claims were barred by the doctrine of accord and satisfaction and that she failed to state a claim on which relief can be granted. Paopao in turn filed for partial summary judgment asking the court to find that *Ahlborn* can be applied retroactively, that DSHS's receipt of $20,000 from the negotiated settlement violated *Ahlborn*, DSHS's negotiation of the agreement was an ultra vires act, and that the statute of limitations had not run. After hearing oral arguments, the trial court granted summary judgment for DSHS and denied Paopao's motion. The trial court denied Paopao's request for reconsideration. Paopao appeals.

## Discussion

### A. *Standard of Review*

¶8 Paopao appeals the trial court's granting of summary judgment to DSHS. When reviewing a summary judgment order, the appellate court undertakes the same inquiry as the trial court. *Thompson v. Peninsula Sch. Dist.*, 77 Wn. App. 500, 504, 892 P.2d 760 (1995). Summary judgment is proper when all facts and inferences are viewed in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the moving party is entitled to a judgment as a matter of law. CR 56(c). The moving party bears this burden of proof. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). "A

material fact is one upon which the outcome of the litigation depends." *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980).

B. *Accord and Satisfaction*

¶9 In 2005, the parties settled DSHS's claim for reimbursement of medical expenses from the amount Paopao received from the third party tortfeasor. DSHS asserts this agreement was an accord and satisfaction, which extinguished any claim Paopao had as to the validity of the lien.

¶10 Accord and satisfaction requires the parties have a bona fide dispute, an agreement to settle that dispute, and performance of the agreement. 25 DAVID K. DEWOLF, KELLER W. ALLEN & DARLENE BARRIER CARUSO: WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 16:2 (2d ed. 2007). An accord and satisfaction is a new contract—a contract complete in itself. *Evans v. Columbia Int'l Corp.*, 3 Wn. App. 955, 957, 478 P.2d 785 (1970). Its enforceability does not depend on the antecedent agreement. *Nw. Motors, Ltd. v. James*, 118 Wn.2d 294, 305, 822 P.2d 280 (1992); *Perez v. Pappas*, 98 Wn.2d 835, 843, 659 P.2d 475 (1983). When an accord is fully performed, the previously existing claim is discharged and all defenses and arguments based on the underlying contract are extinguished. *Nw. Motors*, 118 Wn.2d at 305; *Mut. of Enumclaw Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 37 Wn. App. 690, 694, 682 P.2d 317 (1984). A strong presumption attaches that the parties have considered and settled every existing difference. *Burrows v. Williams*, 52 Wash. 278, 287, 100 P. 340 (1909). To overcome this strong presumption requires "testimony so clear and convincing that the court can free the transaction from all doubt as to the intent of the parties." *Id.* An accord and satisfaction, like any contract, can be set aside, in whole or in part, for such reasons as mutual mistake, supervening illegality, or frustration of purpose. 1 AM. JUR. 2D *Actions* § 24, at 812 (2005); *Teel v. Cascade-Olympic Constr. Co.*, 68 Wn.2d 718, 720, 415 P.2d 73 (1966).

¶11 We agree with DSHS that the parties reached an accord and satisfaction. The initial lien asserted by DSHS

was disputed by Paopao. To resolve the dispute, the parties subsequently agreed to settle the claim for $20,000. Paopao performed on the agreement by tendering payment of $20,000 in November 2005. The letter accompanying Paopao's payment stated, "[t]his check represents full and final payment in settlement of all sums owing to date *in full accord and satisfaction* of all monies owed to you in payment of any and all liens DSHS has against our client, Karine Paopao, for the above-referenced matter." (Emphasis added.) In turn, DSHS released the lien. There was no apparent reservation of rights or defenses on the underlying agreement. We hold that by performing on the agreement, which constitutes an accord and satisfaction, Paopao released her right to any claims and defenses under the original dispute.

C. *Vacation and Retroactive Application of Ahlborn*

¶12 Despite the accord and satisfaction reached by the parties, Paopao urges this court to retroactively apply *Ahlborn* and void her settlement with DSHS. Paopao argues that pursuant to *Ahlborn*, the settlement agreement is void because DSHS lacked legal authority to assert a claim on the portion of her recovery that represented more than medical expenses. DSHS therefore received more of her third party recovery than it was legally entitled to.

¶13 In *Ahlborn*, the United States Supreme Court held that when a Medicaid recipient settles a tort claim against a third party, federal Medicaid law prohibits a state from asserting a lien in excess of that portion of the settlement proceeds that represent medical expenses. 547 U.S. at 283. *Ahlborn* involved an Arkansas law that automatically imposed a lien in an amount equal to Medicaid's costs on a Medicaid recipient's tort settlement with a tortfeasor. *Id.* at 272. Arkansas Department of Health sought to enforce the entire lien against Ahlborn's third party settlement. The *Ahlborn* opinion reasoned that federal Medicaid law requires states, which administer the program, to take all measures necessary to identify the legal liability of

third parties and to seek reimbursement. 42 U.S.C. § 1396a(a)(25)(A), (B). As a condition for eligibility in the program, federal law requires Medicaid recipients to assign to the state any rights to payments for medical care received from third parties. *Ahlborn*, 547 U.S. at 279. Thus, based on statutory language, the Supreme Court held a state may place a lien on any recovery from a third party only in an amount that represents payments for medical care. *Id.* at 279-80.

¶14 Paopao contends the *Ahlborn* decision requires vacation of her settlement agreement. Generally, only when a matter is still pending is case law given retroactive effect. *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752, 115 S. Ct. 1745, 131 L. Ed. 2d 820 (1995). If federal courts apply a new rule to the litigants before it, it applies to all other pending cases not barred by procedural requirements of res judicata. *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 543-44, 111 S. Ct. 2439, 115 L. Ed. 2d 481 (1991). The *Ahlborn* Court did apply the rule to the controversy before it, but *Ahlborn* was filed six months after the accord and satisfaction in this case was tendered and three months after the parties fully performed. The dispute was no longer pending when the decision was announced. *Ahlborn* does not apply retroactively to this case.

¶15 Settlement agreements between private parties are viewed with finality. *Or. Mut. Ins. Co. v. Barton*, 109 Wn. App. 405, 414, 36 P.3d 1065 (2001). In the insurance context, however, the Washington Supreme Court has applied new decisional law retroactively to void settlement agreements. *Bradbury v. Aetna Cas. & Sur. Co.*, 91 Wn.2d 504, 507-08, 589 P.2d 785 (1979). In *Jain v State Farm Mutual Automobile Insurance Co.*, the court found that "decisional law handed down after a final settlement [agreement] between [the] insurer and insured should be retroactively applied to void an otherwise valid release, unless the insurer reasonably and justifiably relied upon the state of the predecisional law." 130 Wn.2d 688, 692, 926 P.2d 923 (1996); *accord Bradbury*, 91 Wn.2d at 508-09.

Based on the analysis in *Jain*, Paopao urges this court to retroactively apply *Ahlborn* to vacate her settlement with DSHS.

¶16 In order to determine if the parties were justified in their reliance on prior case law, a court evaluates whether it had ever taken a position on a question of law and if the decisional law is a case of first impression. *Bradbury*, 91 Wn.2d at 510-11. In 2000, the Washington Supreme Court filed *Wilson v. State*, which held DSHS may seek reimbursement of its expenditures and assert a lien against a Medicaid recipient's entire recovery from a third party. 142 Wn.2d 40, 42, 10 P.3d 1061 (2000), *cert. denied*, 532 U.S. 1020 (2001). The *Wilson* court expressly held the lien may exceed the amount in a settlement that represents medical expenses. *Id.* at 48. *Wilson* clearly established that DSHS could seek full reimbursement from a Medicaid recipient's third party settlement. DSHS contends it reasonably relied on *Wilson* in forming its agreement with Paopao. The record supports this contention. In its correspondence with Paopao, DSHS repeatedly referred to *Wilson* to explain its right and obligation to seek full recovery under Medicaid law.

¶17 Paopao however argues that DSHS was not justified in relying on *Wilson* because the Eighth Circuit had expressly rejected its reasoning in 2005. *Ahlborn v. Ark. Dep't of Human Servs.*, 397 F.3d 620 (8th Cir. 2005), *aff'd*, 547 U.S. 268. She contends that *Wilson* was therefore not a "definitive" interpretation of federal law. We disagree. At the time the parties settled, *Wilson* governed the interpretation and validity of Washington's Medicaid lien provisions. The Supreme Court had denied certiorari in *Wilson* in May 2001 and did not agree to hear *Ahlborn* until after the parties settled. DSHS reasonably and justifiably relied on *Wilson*. Further, it appears that Paopao did not rely on *Ahlborn*. The Eighth Circuit decision was announced before Paopao tendered payment on the accord and satisfaction contract. The Eighth Circuit's holding in *Ahlborn* was clearly more favorable to her position than *Wilson*. Paopao

could have and would have been expected to assert the *Ahlborn* decision in order to renegotiate the settlement amount or to delay entering into an agreement pending potential Supreme Court review. She did not. This suggests Paopao also relied on *Wilson*. Such reliance by both parties was reasonable on these facts.

¶18 We hold the settlement entered into in reasonable reliance on *Wilson* is final and should not be vacated. *Ahlborn* cannot be applied retroactively under these facts.

### D. *Mutual Mistake*

¶19 Paopao also argues this court should invalidate the agreement because both parties were mutually mistaken about DSHS's authority to assert a lien for the full amount of her third party recovery.

¶20 " 'A party seeking to rescind an agreement on the basis of mutual mistake must show by clear, cogent and convincing evidence that the mistake was independently made by both parties.' " *Chem. Bank v. Wash. Pub. Power Supply Sys.*, 102 Wn.2d 874, 898-99, 691 P.2d 524 (1984) (quoting *Simonson v. Fendell*, 101 Wn.2d 88, 91, 675 P.2d 1218 (1994)). Mutual mistake occurs when the belief is not in accord with the facts. RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981). A contract is voidable for mutual mistake when

> (1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.
>
> (2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

*Id.* In their briefs, both parties concede that based on *Wilson*, they believed the DSHS could assert a lien for Paopao's entire third party settlement. In 2005, when the parties settled, *Wilson* expressly permitted DSHS to assert

a lien against a Medicaid recipient's third party recovery in excess of the portion representing medical costs. 142 Wn.2d at 50.[1] The parties were not mistaken about the law when they settled. When they settled, *Wilson* controlled and permitted the actions taken by DSHS.

¶21 We hold there was no mutual mistake of law because the parties reasonably relied on controlling Washington law.

E. *Ultra Vires*

¶22 Based on *Ahlborn*, Paopao argues DSHS lacked the statutory authority to settle with her for more than the portion of the settlement representing medical expenses.

¶23 An administrative agency created by statute has only those powers expressly granted or necessarily implied by that statute. *Props. Four, Inc. v. State*, 125 Wn. App. 108, 105 P.3d 416 (2005); *Barendregt v. Walla Walla Sch. Dist. No. 140*, 26 Wn. App. 246, 249, 611 P.2d 1385 (1980). This is especially true "where the public treasury will be directly affected." *State ex rel. Bain v. Clallam County Bd. of County Comm'rs*, 77 Wn.2d 542, 548, 463 P.2d 617 (1970) (citing *State ex rel. Thurston County v. Dep't of Labor & Indus.*, 167 Wash. 629, 9 P.2d 1085 (1932)). The doctrine applies to governmental action to " 'protect the citizens and taxpayers . . . from unjust, ill-considered, or extortionate contracts, or those showing favoritism'." *Noel v. Cole*, 98 Wn.2d 375, 378, 655 P.2d 245 (1982) (alteration in original) (quoting 10 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 29.02, at 200 (3d ed. 1981)). If a state agent lacks legal authority, " 'no void act of theirs can be cured by aid of the doctrine of estoppel.' " *Barendregt*, 26 Wn. App. at 250 (quoting *Finch v. Matthews*, 74 Wn.2d 161, 172, 443 P.3d 833 (1968)).

---

[1] Paopao relies on *Chemical Bank* to suggest that the parties' mistaken belief about an agency's statutory authority constitutes a mistaken material assumption. 102 Wn.2d at 899. Unlike the present case, *Chemical Bank* involved an agency that lacked authority concurrent with its actions to contract. *Id.* At the time of contract, the parties were mistaken about the law. *Id.*

¶24 DSHS has statutory authority to negotiate settlements. RCW 43.20B.050, .060. Pursuant to that authority, it negotiated the settlement with Paopao. DSHS exercised this authority consistent with controlling decisional law with regard to the reach of its lien for reimbursement. We hold its actions were not ultra vires.

¶25 We affirm.

DWYER, A.C.J., and ELLINGTON, J., concur.