FILED
COURT OF APPEALS
DIVISION II

2013 APR -2 AM 8: 47

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ED BRICKER, | No. 42139-9-II |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| STATE OF WASHINGTON, DEPT. OF HEALTH, | |
| Respondents. | |

BRIDGEWATER, J.P.T.[1] — Ed Bricker appeals the trial court's order granting summary judgment to the Department of Health (DOH), dismissing his tort claim and asserting that the DOH wrongly denied him a clandestine drug lab decontamination (CDL) certification. Bricker argues that summary judgment was erroneous because the trial court failed: (1) to enter supporting findings of fact and conclusions of law; (2) to limit the settlement agreement to past conduct; (3) to consider contextual evidence; and (4) to hold that the settlement agreement was unconscionable. We affirm because the parties' prior settlement agreement precludes Bricker's professional contact with the DOH, which contact would be significant if DOH were to issue his desired certification.

---

[1] Judge C. C. Bridgewater is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21(c).

FACTS

From 1991 to 2005, Bricker worked for the DOH as a radiation health physicist at the Hanford Nuclear Reservation. In 2002, Bricker filed a discrimination and whistle-blower protection lawsuit against the DOH.

The parties, both of whom had legal representation, settled the lawsuit in April 2005 by written agreement. The settlement agreement stated its purpose as "resolving the full range of misunderstandings, disputes, and potential claims . . . and to end any disputes or interaction between the employee and the department." Clerk's Papers (CP) at 28. As part of the agreement, the DOH paid Bricker $240,000, which included $50,000 in attorney fees. The agreement also required Bricker's resignation and provided that Bricker "will not have any further professional or official contact with [DOH]." CP at 31. In the event of a dispute, the agreement provided that the sole remedy "is to seek specific performance in Thurston County Superior Court," with the predominantly prevailing party entitled to reasonable attorney fees. CP at 32. Based on the signed agreement, a federal district court entered judgment against the State for the purpose of payment and dismissed the matter with prejudice.

In 2006, Bricker registered as a counselor with the DOH.[2] At about the same time, Bricker and two of his brothers, William and Ken Bricker,[3] sought CDL certification from the DOH, which certification authorizes professional clean up of properties damaged by the presence

---

[2] DOH states that this circumstance was an accident and further states that it no longer issues registered counselor certifications; therefore, Bricker no longer holds this or any other DOH certifications.

[3] We refer to William and Ken Bricker by their first names for clarity; we intend no disrespect.

of illegal drug labs (i.e., methamphetamine labs).[4] Based on the settlement agreement, the DOH denied Bricker's certification. But because Bricker's brothers were not parties to the settlement agreement, the DOH granted their certifications.

Bricker did not seek specific performance in Thurston County Superior Court. Instead, three years after the DOH's denial of his certification, Bricker and his brothers brought a tort action against the DOH, seeking an order granting the CDL certification to Bricker and also seeking damages. Bricker's complaint alleged intentional interference with a business expectancy, retaliation or discrimination for whistle-blowing, and extreme and outrageous conduct causing Bricker to experience emotional distress.

The trial court granted the DOH's motion to dismiss William's and Ken's claims, agreeing that they failed to state a claim for which relief can be granted. Later, the trial court granted the DOH's summary judgment motion and dismissed Bricker's tort claim. Bricker appeals.

ANALYSIS

Bricker argues that summary judgment was erroneous because the trial court failed: (1) to enter supporting findings of fact and conclusions of law; (2) to consider contextual evidence that Bricker never contemplated that the agreement would preclude him from obtaining a CDL certificate; (3) to hold that the agreement was unconscionable; and (4) to consider DOH's misconduct. The DOH responds that the settlement agreement is dispositive. We agree with the DOH.

---

[4] Neither William nor Ken is a party to this appeal.

## I. SUMMARY JUDGMENT

### A. Standard of Review

We review a grant of summary judgment de novo and perform the same inquiry as the trial court. *Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). We view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Michak*, 148 Wn.2d at 794-95. "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. & Santa Fe R.R. Co.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005).

### B. No Findings of Fact

As an initial matter, we reject Bricker's argument that summary judgment was erroneous because the trial court failed to enter supporting findings of fact and conclusions of law. The function of a summary judgment proceeding is to determine whether a genuine issue of fact exists, not to determine issues of fact. *Davenport v. Wash. Educ. Ass'n*, 147 Wn. App. 704, 715 n.22, 197 P.3d 686 (2008). As a result, our Supreme Court has "'held on numerous occasions that findings of fact and conclusions of law are superfluous in both summary judgment and judgment on the pleadings proceedings.'" *Davenport*, 147 Wn. App. at 715 n.22 (quoting *Wash. Optometric Ass'n v. Pierce County*, 73 Wn.2d 445, 448, 438 P.2d 861 (1968)).

C.    The Ordinary Meaning of Actual Words

Bricker next argues that summary judgment was erroneous because the trial court failed: (1) to consider contextual evidence that Bricker never contemplated that the agreement would preclude him from obtaining a CDL certificate and (2) to limit the settlement agreement to Bricker's former employment. The DOH correctly responds that the settlement agreement's ordinary meaning prohibits Bricker from seeking a CDL certificate.

Washington strongly favors and encourages settlement agreements. *Chadwick v. Nw. Airlines, Inc.*, 33 Wn. App. 297, 300, 654 P.2d 1215 (1982). Once parties have agreed to settle a tort claim, the foundation for judgment is their written contract, not the underlying tortious conduct allegations. *Jackson v. Fenix Underground, Inc.*, 142 Wn. App. 141, 146, 173 P.3d 977 (2007). Regarding a settlement agreement, a strong presumption attaches that the parties have considered and settled every existing difference. *Paopao v. State, Dep't of Soc. & Health Servs.*, 145 Wn. App. 40, 46, 185 P.3d 640 (2008). Overcoming this strong presumption requires "'testimony so clear and convincing that the court can free the transaction from all doubt as to the intent of the parties.'" *Paopao*, 145 Wn. App. at 46 (quoting *Burrows v. Williams*, 52 Wash. 278, 287, 100 P. 340 (1909)). We give the words used in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. *Hearst Commc'ns, Inc. v Seattle Times Co.*, 154 Wn 2d 493, 504, 115 P.3d 262 (2005). If we can determine the intent from the actual contract words, the parties' subjective intent is generally irrelevant. *Hearst*, 154 Wn 2d at 504.

In the settlement agreement's first paragraph, it states its purpose as "resolving the full range of misunderstandings, disputes, and potential claims . . . and to end any disputes or interaction between the employee and the department." CP at 28. Under the heading "Discharge of Obligation" is a subheading titled, "Resignation, Agreement not to Seek Further State Employment or Interact with the Department." CP at 31. Under that subheading, the agreement states that Bricker "will not have any further professional or official contact with [the DOH]." CP at 31.

Here, the ordinary meaning of "no professional or official contact with [the DOH]" is clear and controlling language. Further, the entirety of the agreement supports, rather than contradicts, the ordinary meaning of the words used. Because we can determine the intent from the ordinary and usual meaning of the actual words of the contract, Bricker's subjective intent, including his argument that he never contemplated this result, is irrelevant. *Hearst*, 154 Wn 2d at 504. Similarly, the ordinary meaning of the language does not limit the settlement agreement to Bricker's former employment at the Hanford Nuclear Reservation. Instead, the plain language states that Bricker is "not to seek *further* state employment" and Bricker "will not have any *further* professional or official contact with [DOH]." CP at 31 (emphasis added). Therefore, we reject Bricker's argument that the agreement did not restrain him from seeking future employment with the DOH unrelated to radiation health.

The specific DOH contact at issue here involves the CDL certification, which the DOH highly regulates throughout the certification's duration. *See* RCW 64.44.050, .060. For

example, in addition to the initial certification process, the DOH is responsible for suspension and revocation of CDL certification. RCW 64.44.060. As part of those responsibilities, the DOH monitors CDL-certificated personnel for specific levels of experience required for the particular job sites. RCW 64.44.070; Ch. 246-205 WAC. Additionally, the DOH requires specific retraining and continuing education. RCW 64.44.070; Ch. 246-205 WAC. Given the dangerous compounds involved, the DOH highly regulates every aspect of decontamination. Because CDL certification requires professional and official contact with the DOH at every step, a CDL certificate holder cannot avoid significant professional and official contact with the DOH.

As expressly stated, the settlement agreement precludes Bricker from interaction and professional contact with the DOH. Because the interaction required for CDL certification is significant, the DOH properly denied it. Therefore, the trial court correctly determined that Bricker's tort action, based on the denied certificate, involved no genuine issues of material fact. *Michak*, 148 Wn.2d at 794-95. We conclude that the trial court properly granted summary judgment in the DOH's favor.

D.     Consideration Given

Bricker argues that summary judgment was erroneous because the trial court failed to hold that the agreement was unconscionable. Bricker's argument relies on case law discussing employment agreements. *See Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 833, 100 P.3d 791 (2004); *Wood v. May*, 73 Wn.2d 307, 309-10, 438 P.2d 587 (1968). In *Labriola*, our Supreme

Court determined that a noncompete covenant in an employment contract was invalid because the employee did not receive consideration in exchange for his noncompete agreement. *Labriola*, 152 Wn.2d at 838.

In contrast to *Labriola*, the DOH paid $190,000 to Bricker and another $50,000 for his attorney fees. The parties had a bona fide dispute in the midst of litigation, the parties agreed to settle that dispute, and substantial money changed hands as part of transacting the settlement agreement. *See Paopao*, 145 Wn. App. at 46 (discussing accord and satisfaction under a settlement agreement forming an enforceable contract and discharging the underlying claims). In a settlement agreement, "[e]ach party's promise in the new agreement is supported by an entirely new consideration—the return promise of the other. . . . And so the accord is enforceable as a contractual agreement in its own right." *Oregon Mut. Ins. Co. v. Barton*, 109 Wn. App. 405, 413-14, 36 P.3d 1065 (2001) (internal citations omitted). Generally, a settlement is a voluntary compromise wherein both parties accept something less than what they believe they are entitled to because the compromise is more advantageous than the risks and benefits involved in pursuing the claim. *Chadwick*, 33 Wn. App. at 301. Here, Bricker voluntarily entered the agreement while represented by counsel; in exchange for his agreement, he received both payment and promise from the State. Therefore, we reject Bricker's argument that his settlement agreement is unconscionable.

E.      Alleged Misconduct

Finally, Bricker alleges that the DOH mishandled his job reference, in violation of the

8

agreement. Bricker argues in passing that "the present lawsuit is over alleged subsequent misconduct by [the DOH,] in providing bad job references." Br. of Appellant at 9. But Bricker has not assigned error to this issue or presented meaningful facts or analysis. We generally will not consider argument not supported by citation to authority, references to the record, or meaningful analysis. RAP 10.3(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Further, we generally will not consider argument without assignment of error. RAP 10.3(a)(4).

Additionally, the settlement agreement provides that the sole remedy for disputes "is to seek specific performance in Thurston County Superior Court." CP at 32. Bricker did not seek such remedy regarding these allegations and we do not consider them here.

## II. ATTORNEY FEES

The DOH asks for attorney fees under RAP 18.1 and the language in the settlement agreement. As noted above, the agreement intends that the parties resolve disputes by seeking specific performance in Thurston County Superior Court and further provides that "[t]he predominantly prevailing party shall be entitled to reasonable attorneys fees as determined by the court." CP at 32.

Although Bricker elected to challenge the DOH's denial of his CDL certification in a tort claim, the agreement's attorney fee provision will nevertheless apply if the settlement agreement served as the basis for Bricker's claim. *Hill v. Cox*, 110 Wn. App. 394, 411, 41 P.3d 495 (2002).

No. 42139-9-II

A party bases his claim on a contractual agreement if the claim arose out of the contract and if the contract is central to the dispute. *Seattle First Nat'l Bank v. Wash. Ins. Guar. Ass'n*, 116 Wn.2d 398, 413, 804 P.2d 1263 (1991). Here, the DOH denied Bricker's certification because of the settlement agreement; therefore, the agreement is the source of Bricker's claim and is central to his dispute. We conclude that because Bricker's tort claim was an action on the settlement agreement, the DOH is entitled to reasonable attorney fees as provided by the agreement.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, J.P.T.
BRIDGEWATER, J.P.T.

We concur:

_____, A.C.J.
JOHANSON, A.C.J.

_____, J.P.T.
WIGGINS, J.

10