208 P.3d 1092 (2009)
Ronald LUNSFORD and Esther Lunsford, Respondents,
v.
SABERHAGEN HOLDINGS, INC., and First Doe through One Hundreth DOE, Petitioners.
No. 80728-1.
Supreme Court of Washington, En Banc.
Argued October 30, 2008.
Decided June 4, 2009.
*1093 Timothy Kost Thorson, Jason Wayne Anderson, Carney Bradley & Spellman, Seattle, for Petitioner.
Philip Albert Talmadge, Talmadge/Fitzpatrick, Tukwila, Cameron O. Carter, Brayton Purcell, LLP, Portland, OR, for Respondent.
James Otis Neet, Jr., Kansas City, MO, Paul Kalish, Crowell & Moring, LLP, Washington, DC, Karen Harned, Elizabeth Milito, N.F.I.B.L.F., Washington, DC, Robin S. *1094 Conrad, Amar Sarwal, Washington, DC, Lynda Mounts, Kenneth Stoller, American Ins. Ass'n, Washington, DC, Mark Behrens, Shook, Hardy & Bacon, LLP, Washington, DC, George W. Keely, Keely, Kuenn & Reid, Chicago, IL, Ann Spragens, Sean McMurrough, Property Casualty Insurers, Des Plaines, IL, Gregg Dykstra, National Ass'n of Mutual Ins. Co., Indianapolis, IN, for amicus curiae on behalf of American Insurance Association.
William Joel Ritzick, Janet L. Rice, Schroeter & Bender, Seattle, for amicus curiae on behalf of Schroeter, Goldmark & Bender.
Bryan Patrick Harnetiaux, Spokane, WA, Tim M. Higgins, Winston & Cashatt, Spokane, WA, for amici curiae on behalf of Washington State Ass'n for Justice Foundation.
FAIRHURST, J.
¶ 1 This case requires us to decide whether strict product liability applies retroactively to a claim arising out of asbestos exposure occurring prior to our adoption of strict product liability. "`Ordinarily, a decision of a court of last resort overruling a former decision is retrospective as well as prospective in its operation, unless specifically declared by the opinion to have prospective effect only.'" State ex rel. Wash. State Fin. Comm. v. Martin, 62 Wash.2d 645, 671, 384 P.2d 833 (1963) (quoting Fla. Forest & Park Serv. v. Strickland, 154 Fla. 472, 476, 18 So.2d 251 (1944)). An exception to this general rule is selective prospectivity, which allows a court to apply a new rule of law to the litigants in the case announcing the new rule and to all litigants whose claims arise after that decision. Claims arising prior to the announcement of the new rule of law continue to be governed under the oldnow overruledrule of law.
¶ 2 In Robinson v. City of Seattle, 119 Wash.2d 34, 830 P.2d 318 (1992), we abolished selective prospectivity. Robinson eliminates selective prospectivity by holding "retroactive application of a principle in a case announcing a new rule precludes prospective application of the rule in any subsequently raised suit based upon the new rule." Id. at 77, 830 P.2d 318 (emphasis omitted).
¶ 3 Saberhagen Holdings, Inc., argues we have implicitly overruled Robinson. According to Saberhagen, before Ronald Lunsford's strict product liability claim, filed by Respondents Ronald and Esther Lunsford, can go forward, the court must apply the Chevron Oil test[1] to determine if strict product liability should have selectively prospective application. Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), overruled in part by Harper v. Va. Dep't of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). We disagree. This court has not overruled Robinson. Under Robinson, because we have already applied strict product liability retroactively, it applies to all claims arising before our adoption of strict product liability as to manufacturers in 1969[2] and as to product suppliers in 1975.[3] This necessarily includes Lunsford's claims against Saberhagen. We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

Facts
¶ 4 Lunsford suffers from mesothelioma as a result of his exposure to asbestos over a 29 year period, including nonoccupational exposure through his father, Oakley Lunsford, from 1948 to 1965. Oakley Lunsford worked as an insulator at a Texaco refinery in Anacortes, Washington, during the summer of 1958, where he worked with asbestos insulation products supplied by The Brower Company.[4] *1095 Lunsford claims he was exposed to asbestos fibers Oakley Lunsford brought home on his clothing and tools. Lunsford alleges causes of action in negligence and strict product liability against Saberhagen as Brower's successor in interest.

Procedural History
¶ 5 Saberhagen first moved for partial summary judgment on Lunsford's strict product liability claim in King County Superior Court, arguing Saberhagen was not liable as a matter of law because Lunsford was not a "user" under section 402A of the Restatement (Second) of Torts (1965). The trial court granted Sabotage's motion for summary judgment. The Court of Appeals overturned the trial court, holding that a household member was a "user" for purposes of section 402A if his exposure to the product is reasonably foreseeable. Lunsford v. Saberhagen Holdings, Inc., 125 Wash.App. 784, 792, 106 P.3d 808, 812 (2005).
¶ 6 On remand, Saberhagen sought partial summary judgment on Lunsford's strict product liability claims a second time, arguing that strict product liability should not apply retroactively in this case. The trial court agreed and dismissed Lunsford's strict product liability claims. The Court of Appeals reversed, holding Robinson requires retroactive application of strict product liability to Lunsford's action against Saberhagen. Lunsford v. Saberhagen Holdings, Inc., 139 Wash.App. 334, 347, 160 P.3d 1089 (2007).
¶ 7 Saberhagen asks this court to reverse the Court of Appeals. It claims the Court of Appeals opinion conflicts with this court's decisions in State v. Atsbeha, 142 Wash.2d 904, 16 P.3d 626 (2001), In re Detention of Audett, 158 Wash.2d 712, 147 P.3d 982 (2006), and Jain v. State Farm Mutual Automobile Insurance Co., 130 Wash.2d 688, 926 P.2d 923 (1996), all of which Saberhagen claims implicitly overrule Robinson and its bar against selective prospectivity.

II. ISSUES

A. Whether we have overruled Robinson.

B. Whether strict product liability applies retroactively to allow Lunsford's claim.

III. ANALYSIS

Standard of Review
¶ 8 "We review summary judgment de novo, engaging in the same inquiry as the trial court and viewing the facts and reasonable inferences from those facts in the light most favorable to the nonmoving party." City of Spokane v. County of Spokane, 158 Wash.2d 661, 671, 146 P.3d 893 (2006) (citing Berrocal v. Fernandez, 155 Wash.2d 585, 590, 121 P.3d 82 (2005)). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Where, as here, only legal questions are before the court, we review those questions of law de novo. Wash. State Farm Bureau Fed'n v. Gregoire, 162 Wash.2d 284, 300, 174 P.3d 1142 (2007) (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002)).

A. We have not overruled or limited our holding in Robinson

¶ 9 Judicial decisions may have retroactive, prospective, or selectively prospective application. Robinson, 119 Wash.2d at 74, 830 P.2d 318 (citing James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 535, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991)). Retroactive application, by which a decision is applied both to the litigants before the court and all cases arising prior to and subsequent to the announcing of the new rule, is "`overwhelmingly the norm.'" Id. (emphasis omitted) (quoting Beam Distilling, 501 U.S. at 535, 111 S.Ct. 2439). Prospective application affects only those cases arising after the announcement of the new rule. Id. Selectively prospective decisions are applied to the litigants before the court, but not to those whose causes of action arose before the announcement *1096 of the new rule. Id. at 74-75, 830 P.2d 318. In Robinson, we abolished the selectively prospective application of state appellate decisions. Id. at 77, 830 P.2d 318.
¶ 10 "When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions."[5]Am. Trucking Ass'ns v. Smith, 496 U.S. 167, 177, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (citing Great N. Ry. v. Sunburst Oil & Ref. Co., 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360 (1932)). Historically, Washington has followed the general rule that a new decision of law applies retroactively unless expressly stated otherwise in the case announcing the new rule of law. Martin, 62 Wash.2d at 671, 384 P.2d 833 (citing Strickland, 154 Fla. at 476, 18 So.2d 251); Haines v. Anaconda Aluminum Co., 87 Wash.2d 28, 35, 549 P.2d 13 (1976) (citing S.R. Shapiro, Annotation, Prospective or Retroactive Operations of Overruling Decision, 10 A.L.R.3d 1371, 1384 (1964)); Bradbury v. Aetna Cas. & Sur. Co., 91 Wash.2d 504, 507-08, 589 P.2d 785 (1979); Lewis H. Orland & David G. Stebing, Retroactivity in Review: The Federal and Washington Approaches, 16 Gong. L.Rev. 855, 889 (1980-81) ("Although statements may be found to the contrary, the assumption in Washington cases is that a decision of an appellate court in a civil case has both retroactive and prospective effect unless the decision specifies otherwise or the decision is silent on the point and a subsequent decision considering the first decision holds otherwise." (footnote omitted)); see, e.g., Taskett v. KING Broad. Co., 86 Wash.2d 439, 453, 546 P.2d 81 (1976) (Stafford, C.J., dissenting in part).
¶ 11 In Chevron Oil, the United States Supreme Court established a three factor test for determining whether a new rule of federal law should be applied nonretroactively in a civil case. 404 U.S. 97, 92 S.Ct. 349. The Court held where the following three conditions are met, a court may depart from the presumption of retroactivity to give a new decision either prospective or selectively prospective application: (1) the decision established a new rule of law that either overruled clear precedent upon which the parties relied or was not clearly foreshadowed,[6] (2) retroactive application would tend to impede the policy objectives of the new rule, and (3) retroactive application would produce a substantially inequitable result. Id. at 106-07, 92 S.Ct. 349.
¶ 12 In Taskett, we adopted the Chevron Oil test for determining whether the application of a new rule of state law should depart from our general rule of retroactivity. Taskett was a defamation suit where we overruled our prior cases requiring proof of actual malice in a suit by a private person in which the statements at issue were of public concern. After announcing the new rule, we immediately turned to consider whether we should apply it retroactively or prospectively. Taskett, 86 Wash.2d at 448, 546 P.2d 81. We noted "absent unique circumstances, we have consistently applied our decisions retroactively whenever the intended purpose was to provide a remedy for an individual who has been tortiously injured and now seeks redress before this court."[7]Id. at 449, 546 *1097 P.2d 81 (citing Memel v. Reimer, 85 Wash.2d 685, 538 P.2d 517 (1975); Freehe v. Freehe, 81 Wash.2d 183, 500 P.2d 771 (1972), overruled on other grounds by Brown v. Brown, 100 Wash.2d 729, 675 P.2d 1207 (1984); Godfrey v. State, 84 Wash.2d 959, 530 P.2d 630 (1975); Blaak v. Davidson, 84 Wash.2d 882, 529 P.2d 1048 (1975)). After applying the Chevron Oil test, we determined our decision should apply to all cases arising prior to and after our decision.[8]Id. at 449, 546 P.2d 81.
¶ 3 Despite our adoption of the Chevron Oil test in Taskett, our subsequent decisions relied on a variety of tests to determine whether a new rule of law should have prospective or selectively prospective application.[9] In Lau, we referenced Taskett's adoption of the Chevron Oil test, but instead used a similar test adopted from a Kansas case to emphasize the impact of a recent decision on the litigants. Lau v. Nelson, 92 Wash.2d 823, 826-28, 601 P.2d 527 (1979) (citing Vaughn v. Murray, 214 Kan. 456, 521 P.2d 262 (1974)); see also Milbradt v. Margaris, 103 Wash.2d 337, 339-40, 693 P.2d 78 (1985). In areas such as property, contracts, and taxation where parties had vested interests, we continued to look to whether the parties justifiably and reasonably relied on our prior decisions when entering the transaction.[10]
¶ 14 After Taskett, we recognized selective prospectivity as a means to avoid hardship caused by the announcement of a new rule of law, but rarely applied it. See, e.g., Whitaker v. Spiegel, Inc., 95 Wash.2d 661, 678, 637 P.2d 235 (1981) (holding in the decision overruling previous interpretation of usury statute that the new rule applied retroactively only to parties before the court where defendant did not justifiably rely on prior rule); Lau, 92 Wash.2d 823, 601 P.2d 527 (applying new rule retroactively only to cases that had not gone to judgment at time decision announced based upon impact of decision on trial courts and litigants). Following the United States Supreme Court's decision in Beam Distilling, we abolished selective prospectivity altogether, declaring, "once this court has applied a rule retroactively to the parties in the case announcing a new rule, we will apply the new rule to all others not barred by procedural requirements." Robinson, 119 Wash.2d at 77, 830 P.2d 318.
¶ 15 In Beam Distilling, the Court limited the application of Chevron Oil. With the support of six justices, the Court abolished selective prospectivity. Beam Distilling, 501 U.S. at 537-38, 111 S.Ct. 2439. The Court reasoned that the same policy considerations that led the Court to abandon selective prospectivity in the criminal context in Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), applied to a greater extent in civil cases.[11]Beam Distilling, *1098 501 U.S. at 537-44, 111 S.Ct. 2439. The principle of the equality of litigants is stronger in a civil context, while the need to maintain an incentive to litigate is weaker. Id. at 540-41, 111 S.Ct. 2439. The Court also emphasized the destabilizing effect of switching a rule of law on and off based upon the equities in individual cases:
Once retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application. The applicability of rules of law is not to be switched on and off according to individual hardship; allowing relitigation of choice-of-law issues would only compound the challenge to the stabilizing purpose of precedent posed in the first instance by the very development of "new" rules. Of course, the generalized inquiry permits litigants to assert, and the courts to consider, the equitable and reliance interests of parties absent but similarly situated. Conversely, nothing we say here precludes consideration of individual equities when deciding remedial issues in particular cases.
Id. at 543-44, 111 S.Ct. 2439. The Court further reinforced its abolishment of selective retroactivity by announcing the express reservation test,[12] requiring lower courts to apply decisions of the United States Supreme Court retroactively unless the Court specifically reserved the issue.[13]Id. at 538-40, 111 S.Ct. 2439; see also Harper, 509 U.S. at 97-98, 113 S.Ct. 2510.
¶ 16 In Robinson, we adopted the Beam Distilling Court's holding and limited our use of Chevron Oil and other balancing tests by abolishing selective prospectivity. Robinson, 119 Wash.2d at 73-77, 80, 830 P.2d 318. In Robinson, the city argued the trial court erred by retroactively applying our decisions in R/L Associates, Inc. v. City of Seattle, 113 Wash.2d 402, 780 P.2d 838 (1989), and San Telmo Associates v. City of Seattle, 108 Wash.2d 20, 735 P.2d 673 (1987), where we invalidated the housing preservation ordinance on state statutory grounds. Robinson, 119 Wash.2d at 71, 830 P.2d 318. Both parties in Robinson agreed the Chevron Oil test must be used to determine whether those decisions applied retroactively. Robinson, 119 Wash.2d at 73, 830 P.2d 318. We held, however, that because the rule had already been applied retroactively, we would not apply Chevron Oil to determine the choice of law based upon equity. Robinson, 119 Wash.2d at 80, 830 P.2d 318. We agreed with Beam Distilling's reasoning that selective prospectivity "would be unequal and unmindful of stare decisis as it treats similarly situated litigants unequally." Robinson, 119 Wash.2d at 77, 830 P.2d 318. We therefore held, "retroactive application of a principle in a case announcing a new rule precludes prospective application of the rule in any subsequently raised suit based upon the new rule." Id.
¶ 17 Our holding in Robinson is in accord with the policies of many of our sister states that have recognized the inherent inequality of selective prospectivity. Several courts have held, as we did in Robinson, that once the new rule has been applied in the case announcing the new rule, it must apply to all others regardless of the equities. See, e.g., Ireland v. Worcester Ins. Co., 149 N.H. 656, 658-60, 826 A.2d 577 (2003); Burgard v. Benedictine Living Comtys., 2004 SD 58, 680 N.W.2d 296, 300 (2004); State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 719-20, 39 Tex. Sup.Ct. J. 965 (1996) (using Chevron Oil to determine if rule announced in decision should have purely prospective application); Deaton v. Miss. Farm Bureau Cas. Ins. Co., 994 So.2d 164, 169 (Miss.2008) ("`we have held that all judicial decisions apply retroactively unless the Court has specifically stated the ruling is prospective.'" (quoting Cleveland v. Mann, 942 So.2d 108, 113 (Miss. 2006))); Devillers v. Auto Club Ins. Ass'n, *1099 473 Mich. 562, 586, 702 N.W.2d 539 (2005) (new rule will have retroactive application absent exigent circumstances requiring purely prospective application); State v. Styles, 166 Vt. 615, 616, 693 A.2d 734 (1997); Lakeside Ave. L.P. v. Cuyahoga County Bd. of Revision, 85 Ohio St.3d 125, 127, 707 N.E.2d 472 (1999). Some courts continue to use the Chevron Oil test, but only to determine if the court should depart from the general rule of retroactivity to apply a new rule purely prospectively. Bendorf v. Comm'r of Pub. Safety, 727 N.W.2d 410, 414 (Minn.2007); see also Wenke v. Gehl Co., 274 Wis.2d 220, 267-70, 682 N.W.2d 405 (2004) (using Chevron Oil test to determine if court should apply new rule purely prospectively); Unrau v. Kidron Bethel Ret. Servs., Inc., 271 Kan. 743, 755, 27 P.3d 1 (2001) (new decision will be applied prospectively only if all three Chevron Oil factors are satisfied).
¶ 18 States that retain selective prospectivity substantially limit its application. Montana continues to use Chevron Oil to determine whether a new rule should have selective or purely prospective application but additionally requires that all three prongs of the Chevron Oil test be satisfied. Dempsey v. Allstate Ins. Co., 325 Mont. 207, 217, 104 P.3d 483 (2004). Georgia allows selectively prospective application, but requires that its appellate courts expressly provide for selective prospectivity in the case announcing the new rule. Findley v. Findley, 280 Ga. 454, 460, 629 S.E.2d 222 (2006). Courts that allow for a case-by-case determination do so in very limited circumstances to avoid hardship. See, e.g., Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai`i 92, 97, 176 P.3d 91 (2008) (presumption of retroactive application may be overcome only by showing of substantial prejudice); Wiles v. Wiles, 289 Ark. 340, 342, 711 S.W.2d 789 (1986) (exceptions to retroactive application based upon reliance); MacCormack v. Boston Edison Co., 423 Mass. 652, 657-58, 672 N.E.2d 1 (1996) (reserving selective prospectivity for contract and property law where rights vested under prior rule); Beavers v. Johnson Controls World Servs., Inc., 118 N.M. 391, 398, 881 P.2d 1376 (1994) (strong presumption of retroactivity may be overcome by express declaration in the opinion announcing the new rule of law or by "sufficiently weighty combination of one or more of the Chevron Oil factors").
¶ 19 Although we recognize that changes in the law may work a hardship on those who have relied upon past decisions, we have chosen to favor equality of litigants over individual equities.
"Nor, finally, are litigants to be distinguished for choice-of law purposes on the particular equities of their claims to prospectivity: whether they actually relied on the old rule and how they would suffer from retroactive application of the new. It is simply in the nature of precedent, as a necessary component of any system that aspires to fairness and equality, that the substantive law will not shift and spring on such a basis."
Robinson, 119 Wash.2d at 80, 830 P.2d 318 (quoting Beam Distilling, 501 U.S. at 543, 111 S.Ct. 2439). In Washington, stare decisis protects reliance interests by requiring "`a clear showing that an established rule is incorrect and harmful before it is abandoned.'" State v. Devin, 158 Wash.2d 157, 168, 142 P.3d 599 (2006) (internal quotation marks omitted) (quoting Riehl v. Foodmaker, Inc., 152 Wash.2d 138, 147, 94 P.3d 930 (2004)). The substantive restraints placed on courts to "not only heed the relevant judicial past in arriving at a decision, but also to arrive at it within as straight and narrow a path as possible," ordinarily produces changes in the law "with a minimum of shock to those who act in reliance upon judicial decisions." Roger J. Traynor, Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility, 28 Hastings L.J. 533, 537 (1976). The constraints of stare decisis prevent the law from becoming "subject to incautious action or the whims of current holders of judicial office." In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1920). Although stare decisis limits judicial discretion, it also protects the interests of litigants by providing clear standards for determining *1100 their rights and the merits of their claims.[14] Therefore, overruling prior precedent should not be taken lightly. Keene v. Edie, 131 Wash.2d 822, 831, 935 P.2d 588 (1997).
¶ 20 Where changes in the law cannot be made without undue hardship, we have discretion to apply a new rule of law purely prospectivelyto all litigants whose claims arise after our decision. Robinson, 119 Wash.2d at 77, 830 P.2d 318 (limiting our decision to the abolishment of selective prospectivity).
If rights have vested under a faulty rule, or a constitution misinterpreted, or a statute misconstrued, or ... subsequent events demonstrate a ruling to be in error, prospective overruling becomes a logical and integral part of stare decisis by enabling the courts to right a wrong without doing more injustice than is sought to be corrected.
Martin, 62 Wash.2d at 666, 384 P.2d 833. By its very nature, the decision to apply a new rule prospectively must be made in the decision announcing the new rule of law. It is at that pointwhen we are engaged in weighing the relative harms of affirming or overruling precedentthat courts are in the best position to determine whether a new rule should apply retroactively or prospectively only. Paul J. Mishkin, Foreword: The High Court, the Great Writ, and the Due Process of Time and Law, 79 Harv. L.Rev. 56, 64 (1965) ("it is in fact a necessary implication of the general prospectivity approach that the issue of whether a decision is to be given prospective or retroactive effect should be faced at the time of the decision"). It is then that we will employ any balancing of the equities deemed necessary.[15]
¶ 21 Once we have resolved the issue of retroactive application, whether by applying the new rule to the parties before this court or by announcing the new rule will apply prospectively only, the rule will be applied equally to all similarly situated litigants with no further balancing of the equities under Chevron Oil or any other test. Robinson, 119 Wash.2d at 77, 830 P.2d 318. We continue to agree with the United States Supreme Court that selective prospectivity violates the principle that all similarly situated litigants should be treated equally. Id. at 75, 830 P.2d 318 (citing Beam Distilling, 501 U.S. at 537, 111 S.Ct. 2439). "`We depart from this basic judicial tradition when we simply pick and choose from among similarly situated defendants those who alone will receive the benefit of a "new" rule of ... law.'" Beam Distilling, 501 U.S. at 537-38, 111 S.Ct. 2439 (quoting Desist v. United States, 394 U.S. 244, 258-59, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)). Our holding in Robinson is grounded in this principle.
¶ 22 Nonetheless, Saberhagen claims we readopted selective prospectivity by implicitly overruling Robinson. A later holding overrules a prior holding sub silentio when it directly contradicts the earlier rule of law. See, e.g., Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 403, 823 P.2d 499 (1992) (prior holding that "accident" is defined from the point of view of the insured was overruled sub silentio by later holding that "accident" is not a subjective term); Indus. Coatings Co. v. Fid. & Deposit Co. of *1101 Md., 117 Wash.2d 511, 515-18, 817 P.2d 393 (1991) (holding that statute of limitations determination did not overrule sub silentio earlier case where basis for liability differed). Moreover, the doctrine of stare decisis applies regardless of whether we overrule a prior decision explicitly or implicitly. Therefore, we continue to require "`a clear showing, that an established rule is incorrect and harmful.'" Riehl, 152 Wash.2d at 147, 94 P.3d 930 (quoting Stranger Creek, 77 Wash.2d at 653, 466 P.2d 508). Where we have expressed a clear rule of law as we did in Robinson, we will not  and should not  overrule it sub silentio. Accord State v. Studd, 137 Wash.2d 533, 548, 973 P.2d 1049 (1999). To do so does an injustice to parties who rely on this court to provide clear rules of law and risks increasing litigation costs and delays to parties who cannot determine from this court's precedent whether a rule of decisional law continues to be valid.
¶ 23 Saberhagen's claim that we implicitly overruled Robinson is premised on the faulty assumption that continued use of Chevron Oil and adherence to our holding in Robinson are mutually exclusive. In Robinson, we did not abolish the use of Chevron Oil, but "expressly limit[ed] our holding ... to the abolishment of selective prospectivity in the application of our state appellate decisions." Robinson, 119 Wash.2d at 77, 830 P.2d 318. Chevron Oil continues to be viable for determining, in the case announcing a new rule of law, whether that decision should have prospective application. Therefore, mere application of Chevron Oil is insufficient to overrule Robinson.
¶ 24 Saberhagen claims our use of the Chevron Oil factors in Atsbeha and Audett overruled Robinson. In Atsbeha  a criminal case  we cited the Chevron Oil factors but did not employ a full analysis before determining that retroactive application of our decision in State v. Ellis, 136 Wash.2d 498, 963 P.2d 843 (1998), would not be inequitable. Atsbeha, 142 Wash.2d at 916-17, 16 P.3d 626. Under our precedent for retroactive application of new rules of criminal law, we would have reached this same result. See In re Pers. Restraint of St. Pierre, 118 Wash.2d 321, 325-26, 823 P.2d 492 (1992).
¶ 25 In Audett, we determined whether a new civil commitment proceedings rule announced in In re Detention of Williams, 147 Wash.2d 476, 55 P.3d 597 (2002), should be applied retroactively. Audett, 158 Wash.2d at 720-22, 147 P.3d 982. Audett argued that our ruling in Williams was based on statutory construction and thus related back to the statute's enactment. The State argued our holding in Williams, as a new rule of decisional law, should be applied prospectively, but cited no authority in support. We agreed with the State that the harmonization of the new statute with the rules of evidence was a new rule of law, but not that it had prospective application. Audett, 158 Wash.2d at 720-21, 147 P.3d 982. We referred to Chevron Oil as "instructive," and extensively discussed the factors, but concluded that Ellis should be applied retroactively. Audett, 158 Wash.2d at 720-23, 147 P.3d 982.
¶ 26 Although, under Robinson, discussion of Chevron Oil was unnecessary to reach the holding in either Atsbeha or Audett, the result in each case was consistent with Robinson. Moreover, in neither Atsbeha nor Audett did the parties argue our holding in Robinson was incorrect or harmful. In fact, in neither case did the parties even cite to Robinson, Beam Distilling, or Chevron. In neither case did we discuss the merits of our rule barring selective prospectivity, and in neither case did we employ selective prospectivity. Mere use of the Chevron Oil factors and a scant mention of selective prospectivity in our explanation of the Chevron Oil test[16] is insufficient to overrule our clear statement of law in Robinson. This court did not purport to overrule Robinson in Atsbeha or Audett, nor did we intend to.
¶ 27 At oral argument, Saberhagen argued our analysis in Jain demonstrates our abandonment of Robinson. In Jain, however, we *1102 considered the effect of a new rule on a final settlement agreement, and not an initial cause of action. 130 Wash.2d at 691-92, 926 P.2d 923. We recognized that if our new rule in Tissell v. Liberty Mutual Insurance Co., 115 Wash.2d 107, 795 P.2d 126 (1990), had been decided prior to Jain's settlement with State Farm, the new rule would have applied retroactively to void the clause excepting her from coverage. Jain, 130 Wash.2d at 691, 926 P.2d 923. This is consistent with our holding in Robinson. Because the new rule was applied to an insurance release, and not an initial cause of action, we looked to Bradbury, rather than Robinson, to determine whether Tissell should apply retroactively to void the release agreement.[17]
¶ 28 In Bradbury, we held our decisions of law apply retroactively to bar an otherwise valid insurance release or settlement unless the insurer established justifiable reliance on prior law. 91 Wash.2d at 508-09, 589 P.2d 785. This is an exception to our general rule of favoring finality in private settlements. Paopao v. Dep't of Soc. & Health Servs., 145 Wash.App. 40, 48, 185 P.3d 640 (2008) (citing Bradbury, 91 Wash.2d at 507-08, 589 P.2d 785). In creating this exception, we relied upon our earlier vested rights and contract cases rather than the line of cases following Taskett.[18]Bradbury, 91 Wash.2d at 508, 589 P.2d 785 (citing Cascade Sec. Bank v. Butler, 88 Wash.2d 777, 567 P.2d 631 (1977); Haines, 87 Wash.2d 28, 549 P.2d 13; Martin, 62 Wash.2d 645, 384 P.2d 833). Although in Jain, State Farm argued for a definition of justifiable reliance based upon the Chevron Oil test, we rejected that analysis in favor of our traditional approach to retroactivity in the context of contract theory as applied in Bradbury. Compare Br. of Def. at 14-15, Jain, 130 Wash.2d 688 (No. 63523-4) (citing In re Marriage of Brown, 98 Wash.2d 46, 50, 653 P.2d 602 (1982)) with Jain, 130 Wash.2d at 694, 926 P.2d 923. Because State Farm failed to establish its justifiable reliance on prior law, we held Tissell applied retroactively to void the release. Jain, 130 Wash.2d at 694, 926 P.2d 923. This result is not inconsistent with Robinson.
¶ 29 Because we have not overruled Robinson and decline to do so now, selectively prospective application of strict product liability is not an option. Our holding in Robinson requires that we reject Saberhagen's invitation to apply the Chevron Oil test to determine whether strict product liability should have selectively prospective application. Therefore, if we have previously applied strict product liability retroactively to litigants before this court, we must allow Lunsford's strict product liability claim against Saberhagen to go forward.

B. Under Robinson, strict product liability applies retroactively to Lunsford's claim
¶ 30 This court adopted section 402A of the Restatement (Second) of Torts, applying strict product liability as to manufacturers in Ulmer v. Ford Motor Co., 75 Wash.2d 522, 452 P.2d 729 (1969), and as to sellers and suppliers in Seattle-First National Bank v. Tabert, 86 Wash.2d 145, 542 P.2d 774 (1975).[19] In both cases, we applied the new *1103 rule of law to the litigants before the court. In neither Ulmer nor Tabert did we expressly reserve retroactive application of strict product liability. In accordance with our holding in Robinson, strict product liability now applies retroactively to all claims against manufacturers and suppliers of products.[20]
¶ 31 Saberhagen argues, however, that because the issue has not been squarely addressed, retroactivity of strict product liability under the common law is an issue of first impression. Under our holding in Robinson, the issue of retroactivity is settled by our decision announcing a new rule of law regardless of whether it is raised by the parties and regardless of whether we address the issue. 119 Wash.2d at 77, 830 P.2d 318. In Robinson, we had not yet addressed the retroactive application of our decisions in San Telmo Associates and R/L Associates but simply applied those decisions to the litigants before us. Robinson, 119 Wash.2d at 78, 830 P.2d 318. Despite our failure to directly address this issue, we held these prior applications of a new rule of law required application of the same rule in Robinson and that no balancing of the equities under the Chevron Oil test was required. Robinson, 119 Wash.2d at 80, 830 P.2d 318. The same reasoning applies here.
¶ 32 Our decisions of law apply retroactively to all litigants not barred by procedural requirements unless we expressly limit our decision to purely prospective application. Id. Therefore, our failure to address whether strict product liability applies retroactively in Ulmer, Tabert, and subsequent decisions is not relevant to whether strict product liability applies to Lunsford's claim. Robinson, 119 Wash.2d at 77, 830 P.2d 318. Because we applied strict product liability to the litigants before this court in Ulmer and Tabert, strict product liability also applies to all subsequent claims against manufacturers and suppliers of products not barred by procedural requirements, regardless of whether those claims arose prior or subsequent to our adoption of section 402A. It follows that strict product liability applies to Lunsford's claim as well.

IV. CONCLUSION
¶ 33 Pursuant to Robinson, this court has already determined that strict product liability applies retroactively to all cases not barred by procedural requirements or governed by the tort reform act, including Lunsford's strict product liability claims against Saberhagen. No balancing of the equities is necessary. We affirm the Court of Appeals and hold the trial court erred by dismissing Lunsford's strict product liability claims *1104 against Saberhagen. We remand for further proceedings consistent with this opinion.
WE CONCUR: SUSAN OWENS, CHARLES W. JOHNSON, RICHARD B. SANDERS, DEBRA L. STEPHENS and TOM CHAMBERS, Justices.
MADSEN, J. (concurring).
¶ 34 I concur in the majority's conclusion that the principles of strict liability set out in Ulmer v. Ford Motor Co., 75 Wash.2d 522, 452 P.2d 729 (1969), Seattle-First Nat'l Bank v. Tabert, 86 Wash.2d 145, 542 P.2d 774 (1975), and their progeny, apply retroactively in this case.
¶ 35 However, I do not agree that the court's discretion should be curtailed by strict application of the rules respecting retroactivity set out in Robinson v. City of Seattle, 119 Wash.2d 34, 830 P.2d 318 (1992). In particular, I disagree with the majority's unwise edict that the only exception to the general rule of retroactivity is pure prospectively which can be determined only in the case in which the new rule is announced. We have not, in the years since Robinson was decided, followed such a rigid approach, and for good reason.
¶ 36 In fact, in In re Detention of Audett, 158 Wash.2d 712, 719-23, 147 P.3d 982 (2006), we explicitly and deliberately applied the Chevron Oil factors to determine whether a rule regarding mental evaluations of alleged sexually violent predators announced in a prior case should be given prospective application or selective prospectivity rather than retroactive application. See Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), overruled in part by Harper v. Va. Dep't of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).
¶ 37 The majority cannot reconcile Audett with Robinson, and so it says instead that the discussion of Chevron Oil was "unnecessary to reach the holding" in Audett and that the result was "consistent with Robinson." Majority at 1101. The majority says the same is true of State v. Atsbeha, 142 Wash.2d 904, 16 P.3d 626 (2001). Majority at 1101.
¶ 38 Regardless of the majority's after-the-fact recharacterization, our analysis in Audett was not mere window-dressing. It was deliberate and deliberative. Audett plainly directs that in a case following the case in which the rule at issue is announced, the issue of retroactivity may be considered with prospective application remaining a possibility even though the rule was applied in the case in which it was announced.[1]
¶ 39 The majority allows that the Chevron Oil factors have a place in determining the question of pure prospectivity, which the majority says must be determined in the very same case in which the rule is announced, but they cannot be used to determine prospectivity in any succeeding case. Audett is completely to the contrary. Clearly abandoning the absolutes of Robinson, we recognized in Audett that fairness concerns may demand that we exercise our discretion and apply a prior decision prospectively.
¶ 40 In addition, the issue of retroactivity-prospectivity is often not addressed or even mentioned in the parties' briefing in the case in which a judicially determined rule is first set out and it is often not addressed by the court in that case. This was exactly what happened (or did not happen) in In re Detention of Williams, 147 Wash.2d 476, 55 P.3d 597 (2002), the case announcing the rule that was at the center of the retroactivity-prospectivity question in Audett. Frequently, the issue of retroactivity or prospectivity first comes to the court's attention in a subsequent case. At that point forceful arguments might be made showing unacceptable unfairness in applying the rule retroactively. Yet under the majority's decision overruling Audett, our hands are now tied. We cannot do justice.
*1105 ¶ 41 It is our responsibility, when developing the common law, "to endeavor to administer justice according to the promptings of reason and common sense, which are the cardinal principles of the common law." Sayward v. Carlson, 1 Wash. 29, 41, 23 P. 830 (1890). If we reason that solely because the new rule has once been applied it must always be applied, we do not carry out this responsibility. There is nothing reasonable about retroactively applying a rule of law, no matter the reliance, surprise, hardship, or unfairness involved in retroactive application, merely because it has once been applied, and it is particularly unjust to do so if there has never been a considered decision on the issue of its retroactivity or prospectivity.
¶ 42 It is true that in Audett the Chevron Oil analysis did not lead us to the conclusion that retroactivity was fundamentally unfair. But another case, with another set of facts, and another new rule of law could lead us to an entirely different conclusion.
¶ 43 It must be remembered that the reason the court adopted the rule of retroactivity and abrogated selective prospectivity in Robinson was because we perceived that the United States Supreme Court had "recently limited the Chevron Oil ... rule regarding retroactive application" in James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), a split decision. Robinson, 119 Wash.2d at 73, 830 P.2d 318. It is obvious that the court found great significance in the fact that the United States Supreme Court altered its own retroactivity analysis  the analysis that we had been applying as well. Our court ultimately concluded that the reasoning in Beam Distilling was sound and accepted the premise that similarly situated litigants must always be treated equally. Id. at 77, 830 P.2d 318.
¶ 44 Then, a year after Robinson was decided, the Court explicitly held in Harper, 509 U.S. at 97, 113 S.Ct. 2510, that when it applied "a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate" the court's announcement of the rule. However, the Court also explicitly distinguished between rules of federal law and rules of state law. While a state court must follow Harper with regard to rules of federal law, state courts retain freedom to limit retroactive application of their interpretations of state law. Great N. Ry. v. Sunburst Oil & Ref. Co., 287 U.S. 358, 364-66, 53 S.Ct. 145, 77 L.Ed. 360 (1932); see Harper, 509 U.S. at 100, 113 S.Ct. 2510.
¶ 45 As the Montana State Supreme Court explained, many state courts responded negatively to Harper's retroactivity analysis, and of these a number continued to apply the Chevron Oil analysis or a similar analysis for determining whether a decision should apply prospectively. Dempsey v. Allstate, 325 Mont. 207, 215, 104 P.3d 483 (2004). The Montana court also explained its own history in this area, which included adoption of Chevron Oil in 1978, its subsequent application of Harper, and then its reversion to Chevron Oil without reference to the line of cases following Harper. Dempsey, 325 Mont. at 210-11, 104 P.3d 483.
¶ 46 The Montana court's history and ours are similar, in that this court adopted Chevron Oil's analysis, then purportedly adopted Beam (Harper made Beams' split decision explicitly the law), and then in Audett and other cases reverted to Chevron Oil. Montana ultimately decided to apply retroactivity as the presumptive rule but retained Chevron Oil's prospectivity analysis as an exception when all of its factors favor prospectivity.
¶ 47 In Beavers v. Johnson Controls World Services, Inc., 118 N.M. 391, 881 P.2d 1376 (1994), cited in Audett, 158 Wash.2d at 722, 147 P.3d 982, the New Mexico court acknowledged the "compelling force of the desirability of treating similarly situated parties alike" and accordingly adopted a "presumption of retroactivity for a new rule imposed by a judicial decision in a civil case." Beavers, 118 N.M. at 398, 881 P.2d 1376. However, the court retained the Chevron Oil analysis because it did not find this "reason so powerful that it requires a rule of blanket retroactivity." Id. at 397, 881 P.2d 1376. Rather, the court reasoned that in some cases the Chevron Oil factors, "particularly the factor *1106 or subfactor of the parties' reliance on the old rule  will argue so strongly for nonretroactivity that the factor ... of similar treatment of similarly situated parties will simply be outweighed." Id.
¶ 48 Significantly, and in marked contrast to the majority's harsh analysis here, the New Mexico court "decline[d] to follow the Supreme Court's lead" and pointedly concluded that it could apply a rule prospectively "even though (as in this case) the decision announcing the new rule has already been applied retroactively to the conduct of the litigants in the case in which the rule was announced." Id.
¶ 49 Like Montana, the Ohio Supreme Court recently surveyed case law respecting states' analyses for retroactive or prospective application of rules announced in judicial decisions, observing that Harper overruled Chevron Oil only insofar as it applied to federal law. DiCenzo v. A-Best Prods. Co., 120 Ohio St.3d 149, 897 N.E.2d 132 (2008). The court stated that in Ohio the general rule is that a decision applies retrospectively unless a party has contract or vested rights under the prior decision. Id. at 156, 897 N.E.2d 132. However, an Ohio court "has discretion to apply its decision" prospectively under the Chevron Oil factors and under exceptional circumstances prospective application is justified. Id. at 157, 897 N.E.2d 132.
¶ 50 Like the New Mexico State Supreme Court, the Ohio court rejected the argument that if the case announcing the rule does not contain language imposing only prospective application, the rule was and continues to be retroactive. Id. at 156, 897 N.E.2d 132. The court did not agree that "the passage of time and appellate cases that have applied [the new rule] retrospectively preclude" a court from applying the rule prospectively. Id. The court said that "[t]he mere passage of time, without more, does not diminish our authority to impose a prospective-only application of a court decision." Id. at 157, 897 N.E.2d 132.
¶ 51 Thus, the Ohio Court held that whenever the issue of retroactivity-prospectivity is first addressed, the court may exercise discretion and apply a rule prospectively if the Chevron Oil factors show this is appropriate. The court refused to give up its authority and discretion to decide that a decision may be prospective where the issue of prospectivity-retroactivity had not previously been determined.
¶ 52 Like these courts, in Audett we clearly recognized that retroactivity is the general rule. However, we also recognized that this general rule must yield in the face of compelling reasons favoring prospectivity, regardless of the fact that the new rule of law was applied in the announcing case. In accord with the views expressed by the New Mexico and Ohio courts, in Audett we considered whether the rule at issue should be applied in Audett or instead should be applied prospectively, even though the rule had been applied in the case in which it was announced (Williams, 147 Wash.2d 476, 55 P.3d 597).
¶ 53 Unlike the inflexible analysis of Robinson, which was, as noted, founded on changes to federal retroactivity law, our decision in Audett respects the importance of treating similarly situated litigants alike while retaining the court's discretion to apply a state rule prospectively if the injustice of retroactive application outweighs the interest in similar treatment.
¶ 54 I believe Audett can be fairly read to mean only one thing: Even if a state rule is applied in the case in which it is announced, i.e., it is applied "retroactively" in that case, the court may consider in a subsequent case whether under the Chevron Oil factors the rule should nevertheless be given prospective effect. Because it fails to follow this analysis, the majority decision fails to follow our precedent  for Audett is precedent just as Robinson was, and it is Audett that is the later case. We did, in fact, sub silentio overrule Robinson insofar as it was intended to abrogate the possibility of any selective or modified rule of prospectivity.[2]
*1107 ¶ 55 I believe the better rule is that there should be a presumption that a new rule applies retroactively, but this presumption can be overcome if an analysis under the Chevron Oil factors favors prospectivity. Prospectivity does not have to be determined in the same case that announces the new rule, but may be determined in a subsequent case.

Conclusion
¶ 56 The majority decides that we must surrender our discretion to apply a judicially based state rule of law prospectively even if would be inequitable and unjust to apply it retroactively. I believe the majority fails to carry out our responsibility to administer justice with the reason and common sense necessary to development of the common law. I would follow Audett and retain the courts' discretion to decide whether a judicially determined rule of law should be prospectively applied, regardless of whether the rule was applied in the case in which it was announced.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, and JAMES M. JOHNSON, Justice.
NOTES
[1] The United States Supreme Court adopted a three factor test for determining whether a new rule of law should depart from the default rule of retroactivity to be applied either selectively prospectivelyonly to the litigants before the court and to those whose claims arise after the decisionor purely prospectively-only to those whose claims arise after the new decision. Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), overruled in part by Harper v. Va. Dep't of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).
[2] Ulmer v. Ford Motor Co., 75 Wash.2d 522, 452 P.2d 729 (1969).
[3] Seattle-First Nat'l Bank v. Tabert, 86 Wash.2d 145, 542 P.2d 774 (1975).
[4] Saberhagen alleges Brower was a product seller, and not a manufacturer. Clerk's Papers at 51, 54. For purposes of this opinion only, we assume this is correct. Whether Brower is a product seller or manufacturer for purposes of Restatement (Second) of Torts, section 402A (1965), has no effect on the outcome of this decision.
[5] For an analysis of the greater temporal restrictions placed upon article III courts by the case and controversy requirement, see Note, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L.J. 907 (1962).
[6] In Chevron, the Court held state statutes of limitations applied to personal injury claims under the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331-1356a (Lands Act). Chevron, 404 U.S. at 105, 92 S.Ct. 349. After the petitioner had filed his complaint, the Court announced in Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), that remedy for personal injury claims under the Lands Act was governed by the common law of the adjacent state. Chevron, 404 U.S. at 101, 92 S.Ct. 349. Whether Chevron itself announced a new rule depends upon one's interpretation of the rulewhether it was the narrow issue decided in Chevron or the broader issue in Rodrigue. Significantly, the Court characterized Chevron as "in relevant respect, a pre-Rodrigue case." Chevron, 404 U.S. at 105, 92 S.Ct. 349.
[7] We later construed this general rule of retroactivity in Taskett to refer to both retroactive application in the case before the court, i.e., selective prospectivity, and to general retroactive application. Compare Lau v. Nelson, 92 Wash.2d 823, 825-26, 601 P.2d 527 (1979), with Milbradt v. Margaris, 103 Wash.2d 337, 342, 693 P.2d 78 (1985); see also Haines, 87 Wash.2d at 35, 549 P.2d 13 (holding prior decision has general retroactive application "in keeping with the general rule that an overruling decision is to be given retroactive effect, unless it is specifically provided otherwise"); Bradbury, 91 Wash.2d at 508, 589 P.2d 785 (recognizing retroactive application as the general rule, but noting that this court has on occasion applied a new rule of law "either prospectively or with only limited retroactive effect") (citing Cascade Sec. Bank v. Butler, 88 Wash.2d 777, 567 P.2d 631 (1977)); Martin, 62 Wash.2d at 665-71, 384 P.2d 833 (including acknowledgment of retroactivity as general rule within extensive discussion of pure prospectivity).
[8] "A vigorous dissent indicates quite clearly that the majority intended to give the opinion general retroactive effect and that the majority opinion was not limited to the case before the court." Orland & Stebing, supra, at 896. Chief Justice Stafford dissented from the majority based in part upon the majority's decision to address retroactivity before it was raised in a subsequent decision. Taskett, 86 Wash.2d at 453-54, 546 P.2d 81 (Stafford, C.J., dissenting in part).
[9] See Orland & Stebing, supra, at 897-98 (questioning whether Washington truly adopted Chevron Oil in light of our later decisions).
[10] See, e.g., Martin, 62 Wash.2d at 663, 384 P.2d 833 (overruling decision allowing issuance and sale of limited obligation bonds prospectively only so as not to "jeopardize the massive contractual and governmental enterprises done under its protective shield"); Cascade Sec. Bank, 88 Wash.2d at 784-85, 567 P.2d 631 (applying decision declaring judgments to be liens upon the interests of a real estate contract purchaser prospectively only to prevent harm to reliance interests); Haines, 87 Wash.2d 28, 549 P.2d 13 (new rule of law applied retroactively where appellant failed to prove reliance on prior rule when entering lease agreement).
[11] "[S]elective application of new rules violates the principle of treating similarly situated defendants the same.... [T]he problem with not applying new rules to cases pending on direct review is `the actual inequity that results when the Court chooses which of many similarly situated defendants should be the chance beneficiary' of a new rule." Griffith, 479 U.S. at 323, 107 S.Ct. 708 (citation omitted) (quoting United States v. Johnson, 457 U.S. 537, 556, n. 16, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)).
[12] The express reservation test is similar to the rule of general retroactivity discussed by this court in pre-Robinson decisions. Haines, 87 Wash.2d at 35, 549 P.2d 13; Bradbury, 91 Wash.2d at 507-08, 589 P.2d 785; Martin, 62 Wash.2d at 671, 384 P.2d 833.
[13] This rule garnered a clear majority in Harper, 509 U.S. 86, 113 S.Ct. 2510.
[14] Stare decisis does not require, as the concurrence suggests, concurrence at 3, that we never alter our prior decisions, but merely that we take seriously our responsibility to do so carefully and clearly in order to cause as little hardship as possible to those who may have relied on our prior decisions.
[15] This is consistent with our application of Chevron Oil in Allis-Chalmers Corp. v. City of North Bonneville, 113 Wash.2d 108, 115, 119, 775 P.2d 953 (1989) (holding new rule applied retroactively in case declaring ordinance unconstitutional), and in In re Marriage of Brown, 98 Wash.2d 46, 653 P.2d 602 (1982) (holding McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), did not apply retroactively to final property settlements in case determining division of marital property prior to McCarty should be considered an error of law rather than void for lack of subject matter jurisdiction). Though not a civil case, our immediate determination of retroactivity in State v. Brown, 113 Wash.2d 520, 782 P.2d 1013 (1989), is also instructive. Before announcing our new rule, we recognized the impact of overruling our prior decisional law. Id. at 523, 782 P.2d 1013. Based upon the application of the Chevron Oil factors in United States v. Givens, 767 F.2d 574 (9th Cir.1985), we held the rule announced in Brown would apply prospectively only. Brown, 113 Wash.2d at 544, 782 P.2d 1013.
[16] We used the term "selective prospectivity" exactly one time in Audett: "[I]n Chevron Oil the United States Supreme Court has suggested three factors to consider to determine whether a case should be given prospective application or selective prospectivity." Audett, 158 Wash.2d at 721, 147 P.3d 982 (emphasis added).
[17] Our different treatment of retroactive application to settlement agreements compared to initial causes of action is further highlighted by our rejection of the Court of Appeals' use in Bradbury of the Chevron Oil test in favor of the justifiable reliance test used in vested interest cases. Orland & Stebing, supra, at 898; compare Bradbury v. Aetna Cas. & Sur. Co., 19 Wash.App. 66, 68-69, 573 P.2d 395 (1978), with Bradbury, 91 Wash.2d at 508-09, 589 P.2d 785.
[18] Our reasoning in Bradbury and the briefing of the parties there indicate that our decision was grounded in contract theory. See Bradbury, 91 Wash.2d at 507, 589 P.2d 785 (noting that "the releases were executed in good faith, without any fraud, undue influence or overreaching," and that both parties believed the coverage could not be increased through "`stacking'"); Br. of Appellants at 23-28, Bradbury, 91 Wash.2d 504 (No. 2197-III) (arguing release was void because of mutual mistake of law or fact based on assumption by both parties that settlement was for the full amount of the policy); Br. of Resp't at 15-17, Bradbury, 91 Wash.2d 504 (No. 2197-III) (arguing there was no mistake of law or fact because both parties reasonably and justifiably relied on current state of the law).
[19] In Ulmer, the plaintiff argued that Washington product liability law had reached the point where the fiction of warranty could be replaced by the doctrine of strict product liability. 75 Wash.2d at 528, 452 P.2d 729. We agreed, finding strict product liability "in accord with the import of our cases which have been decided upon a theory of breach of implied warranty." Id. at 531-32, 452 P.2d 729. We remanded, ordering the trial court to apply the new rule. Id. In Tabert, we extended strict product liability to distributors, commenting on the "legal fictions" and "tortured reasoning" employed by the courts to impose liability on sellers of defective products. 86 Wash.2d at 147, 542 P.2d 774. Based upon our holding, we overturned summary judgment for the defendant and remanded for trial. Id. at 155-56, 542 P.2d 774.
[20] Although not necessary to our holding, we note this court and our appellate courts have applied strict product liability retroactively in asbestos litigation. The settled rule in our courts is that strict product liability under the common law applies to actions arising before the effective date of the tort reform act, chapter 4.22 RCW. Mavroudis v. Pittsburgh-Corning Corp., 86 Wash. App. 22, 34, 935 P.2d 684 (1997). Washington appellate courts have approved strict product liability claims where exposure occurred prior to our adoption of section 402A, retroactively applying the rule of Ulmer and Tabert to those cases. See, e.g., Braaten v. Saberhagen Holdings, 165 Wash.2d 373, 198 P.3d 493 (2008) (exposure over 35 years); Simonetta v. Viad Corp., 165 Wash.2d 341, 197 P.3d 127 (2008) (exposure 1954-1974); Lockwood v. AC & S, Inc., 109 Wash.2d 235, 744 P.2d 605 (1987) (exposure 1942-1972); Falk v. Keene Corp., 113 Wash.2d 645, 782 P.2d 974 (1989) (exposure 1947-1953); Van Hout v. Celotex Corp., 121 Wash.2d 697, 853 P.2d 908 (1993) (exposure 1946-1980); Koker v. Armstrong Cork, Inc., 60 Wash.App. 466, 804 P.2d 659 (exposure 1969-1971, 1974-1986), review denied, 117 Wash.2d 1006, 815 P.2d 265 (1991); Bowers v. Fibreboard Corp., 66 Wash. App. 454, 832 P.2d 523 (one plaintiff exposed 1927-1963, the other 1946-1986), review denied, 120 Wash.2d 1017, 844 P.2d 436 (1992); Krivanek v. Fibreboard Corp., 72 Wash.App. 632, 865 P.2d 527 (1993) (exposure in 1950s and 1960s), review denied, 124 Wash.2d 1005, 877 P.2d 1288 (1994); Viereck v. Fibreboard Corp., 81 Wash. App. 579, 915 P.2d 581 (exposure late 1950s), review denied, 130 Wash.2d 1009, 928 P.2d 414 (1996); Mavroudis, 86 Wash.App. 22, 935 P.2d 684 (exposure late 1950s to early 1960s).
[1] Under the Chevron Oil standard, a court considers whether the rule should be given prospective or selectively prospective application by (1) considering whether the rule at issue is a new principle of law, either because it overruled clear past precedent upon which litigants relied or decided an issue of first impression and the decision was not clearly foreshadowed; (2) considering the prior history of the rule, its purpose and effect, and whether its operation would be furthered or retarded by retroactive application; and (3) weighing any inequity involved in retroactive application. Chevron Oil, 404 U.S. at 106-07, 92 S.Ct. 349.
[2] In a strange statement about this court's power, the majority says, "Because we have not overruled Robinson and decline to do so now, selectively prospective application of strict product liability is not an option." Majority at 1102. We have overruled Robinson, in part, albeit sub silentio. But even if we had not, there is no bar to our doing so now.